# UNITED STATES COAST GUARD COURT OF CRIMINAL APPEALS
## Washington, D.C.

## UNITED STATES

### v.

## Christopher M. SUKSDORF
### Seaman Apprentice (E-2), U.S. Coast Guard

## CGCMS 24243

## Docket No. 1182

## 3 September 2003

Special Court-Martial convened by Commanding Officer, Coast Guard Integrated Support Command Seattle. Tried at Seattle, Washington, on 23 January 2003.

| | |
|---|---|
| Military Judge: | CDR Frederick W. Tucher, USCG |
| Trial Counsel: | LT Shawn C. Gray, USCG |
| Assistant Trial Counsel: | LT Michael R. Vaughn, USCG |
| Detailed Defense Counsel: | LT Kyle P. Durand, JAGC, USN |
| Appellate Defense Counsel: | CDR Jeffrey C. Good, USCG[1] |
| | LCDR Nancy J. Truax, USCG[2] |
| Appellate Government Counsel: | LT Sandra J. Miracle, USCG |

## BEFORE
## PANEL ONE
## BAUM, KANTOR, & CAHILL
Appellate Military Judges

CAHILL, Judge:

Appellant was tried by special court-martial, military judge alone. Pursuant to a pre-trial agreement, Appellant entered pleas of guilty to one specification of attempted introduction of marijuana onto a military installation in violation of Article 80, Uniform Code of Military Justice (UCMJ); one specification of possession of marijuana with intent to distribute, two specifications of possession of marijuana, one specification of use of cocaine and marijuana, one specification of use of marijuana, and one specification of introducing marijuana onto a military installation in violation of Article 112a, UCMJ; and five specifications of forgery in violation of Article 123, UCMJ. The military judge accepted Appellant's pleas, entered findings of guilty to those offenses, and sentenced Appellant to confinement for 280 days, reduction to E-1, and a bad

---

[1] CDR Good filed the assignment of errors and brief in this case.
[2] On 9 July 2003, this Court granted CDR Good's motion to withdraw as Appellate Defense Counsel and acknowledged the appearance of LCDR Truax as the new detailed Appellate Defense Counsel.

conduct discharge. Appellant pled not guilty to one specification of distribution of marijuana, one specification of use of marijuana, and to a charge and specification of larceny of six checks. The military judge entered findings of not guilty to those specifications after the Government did not present any evidence of those offenses. The pre-trial agreement allowed the Convening Authority to approve the sentence as adjudged, but required suspension of confinement in excess of 150 days.[3] Appellant also received 41 days of *Allen* credit for pre-trial confinement. *United States v. Allen*, 17 M.J. 126 (C.M.A. 1984).

On appeal, Appellant asserts that the promulgating order incorrectly reflects that Appellant pled guilty to and was found guilty of the specification alleging marijuana use to which he pled not guilty and the military judge entered a finding of not guilty. Appellant also asserts that the Convening Authority's action fails to reflect suspension of confinement in excess of 150 days, as required by the pre-trial agreement. However, Appellant concedes that he was released from confinement at the proper time, and did not serve more than 150 days of confinement, including appropriate credit against his sentence. We agree with Appellant's assertions, suspend confinement in excess of 150 days in accordance with the terms of the pre-trial agreement, and direct the Convening Authority to issue a revised promulgating order that correctly reflects the pleas and findings as well as the suspension of a part of the sentence.

## Background

Appellant's court-martial was the culmination of a short and far from illustrious military career. He enlisted in the Coast Guard on 12 September 2001, reported for active duty on 24 September 2001, completed recruit training, and was assigned to Coast Guard Station Quillayute River. In February 2002, he was involved in an automobile accident and fractured a cervical vertebrae. In March 2002, he was awarded non-judicial punishment for violating an order.[4] During a two-week period in August 2002 while assigned to Coast Guard Station Quillayute River, Appellant forged his roommate's name on five checks drawn on the roommate's bank account. Four of the checks were in the amount of $47.40, and the fifth check was for $43.70. Appellant presented the checks to a local convenience store to obtain cash and cigarettes.

Appellant was then temporarily assigned to Coast Guard Integrated Support Command (ISC) Seattle to await administrative discharge for acts that did not form the basis for any of the charges on which he was court-martialed. A urinalysis sample taken on 3 September 2002 tested positive for both cocaine and marijuana, and Appellant admitted wrongful use of those drugs. On 10 September 2002, Appellant's automobile was subjected to a "random vehicle search"

---

[3] The pre-trial agreement was stamped with a date of "JAN 32, 2003." It was corrected by a pen-and-ink change during the trial to read "JAN 23, 2003."

[4] The Report of Offense and Disposition (CG-4910) contained in Appellant's personnel record indicated that Appellant was informed of his right to consult with counsel and to refuse non-judicial punishment. However, although a box was checked to indicate that an "Acknowledgement of Rights/Acceptance of NJP Form" was attached, that form was not included in Appellant's personnel record as admitted at trial. The military judge expressly indicated that he did not consider Appellant's prior non-judicial punishment when imposing sentence.

while entering ISC Seattle.[5]  Nine bags of marijuana, with a combined weight of approximately 36 grams (slightly over 1 ¼ ounces), were found in his car, and a urinalysis test revealed marijuana use.  He was ordered into pre-trial restriction to ISC Seattle on 11 September 2002.  On 4 October 2002, marijuana was found in Appellant's room at the ISC Seattle barracks.  On 12 October 2002, while in pre-trial restriction, Appellant paid another member of the ISC Seattle crew to bring him marijuana.  Appellant surrendered a separate small quantity of marijuana during a consensual search of his barracks room on 15 October 2002.  Appellant served 93 days of pre-trial restriction before he was placed in pre-trial confinement.  He then served 41 days of pre-trial confinement.[6]

## Government Motion to Exclude Pre-Trial Delay

Appellant was ordered into pre-trial restraint on 11 September 2002, triggering a requirement to bring him to trial within 120 days under Rule for Courts-Martial (RCM) 707.  He remained continuously in pre-trial restriction until he was placed in pre-trial confinement.  Charges were not preferred and referred for trial by special court-martial until 11 December 2002 – over 90 days after Appellant was placed in pre-trial restraint.  Defense counsel was detailed to assist him on 20 December 2002.[7]  On 3 January 2003, the Government submitted a docketing request for a trial date of 9 January – the day on which the speedy trial clock under RCM 707 would expire.  The military judge was detailed to the case on 8 January 2003.  Also, on 8 January 2003, five days after it requested a trial date of 9 January, the Government filed a motion requesting that the military judge exclude, for speedy-trial purposes under RCM 707, all time from 11 September 2002, when Appellant was placed in pre-trial restriction, until the Government received a "litigation package" – which it had not yet received – from the laboratory that performed the urinalysis.[8]  It asserted that the time should be excluded because Appellant's "continued misconduct" while in pre-trial restraint generated the need for additional investigation and that additional time was needed to secure evidence.  In a supplemental pleading filed the following day, the Government asked the military judge to exclude all time up to 1 March 2003 because the Government desired to complete the trial of a potential witness before

---

[5] The Stipulation of Fact admitted at trial indicates that Appellant "consented to a random vehicle search."  Evidence obtained from a random inspection of persons entering a military installation is admissible under Military Rule of Evidence (MRE) 314(c), regardless of the subject's consent, while evidence obtained as a result of a search based on lawful consent is admissible based on MRE 314(e).  As Appellant did not raise the lawfulness of the inspection or search at trial, we need not determine whether Appellant was subjected to a proper random inspection or lawfully consented to a search.  Similarly, Appellant did not contest the lawfulness of any other searches that provided evidence which served as the basis for any of the charges.

[6] The charge sheet indicates that Appellant was placed in pre-trial confinement on 13 December 2002.  The military judge's memorandum of pre-trial conference reflects that pre-trial confinement was imposed on 11 December 2002.  At trial, counsel and the military judge agreed that Appellant served 93 days of pre-trial restriction and 41 days of pre-trial confinement.

[7] A letter from Commanding Officer, Naval Legal Service Office Northwest to Commander, Maintenance and Logistics Command Pacific dated 20 December 2002 reflects the detail of military defense counsel.  A separate detailing memo from Staff Judge Advocate, Maintenance and Logistics Command Pacific is dated 7 January 2003, just two days before the requested trial date and expiration of RCM 707's speedy trial clock.

[8] The Government's submission (signed by a different counsel than those appearing at trial) consistently misspelled Appellant's name.

bringing Appellant to trial.[9] No affidavits or other evidence were included with the pleadings. The trial defense counsel filed a succinct response opposing the Government's request and asking for speedy disposition of the charges. The defense response did not expressly accept or reject the Government's "Summary of Facts" as contained in its written motions.

The military judge conducted a pre-trial conference under RCM 802 by telephone on 10 January 2003. That same day, the military judge issued an "802 Conference Memorandum: Decision and Order on Government Request for Delay." In a detailed ruling, the military judge found that the Government had not shown good cause for excludable delay to conduct additional investigation, to await receipt of the urinalysis litigation report, or to complete trial of a potential witness. However, the military judge granted the Government's request to exclude the period from 3 January 2003 through 10 January 2003 due to unavailability of a military judge. On 13 January 2003, the military judge held another conference under RCM 802. During that conference, the trial defense counsel indicated that he needed time to prepare for trial and requested, without objection from the Government, that the time from 13 January 2003 until 23 January 2003 be considered excludable delay. The military judge granted the defense request and issued an order setting a trial date of 23 January 2003.

Although the Appellant did not raise violation of his right to a speedy trial at trial or on appeal, and has not claimed any prejudice, we feel the need to comment on these pre-trial proceedings. First, we are concerned that the Government was less than candid when it requested a trial date of 9 January 2003, representing that it was prepared to go to trial on that date, and then, less than a week later, requested an open-ended delay on the basis that it had not yet completed its investigation, was awaiting receipt of critical evidence, and needed to complete the trial of a potential witness.

Second, although we agree that the military judge properly denied the Government's request to exclude delay prior to 3 January 2002, and recognize the challenges of conducting pre-trial proceedings when the military judge is in Hawaii, trial counsel is in California, and defense counsel is in Washington, we do not believe an 802 conference is the appropriate forum in which to resolve such contested matters. As we noted in *United States v. Bevacqua*, the Discussion accompanying RCM 802 indicates that the purpose of a conference under that rule "is to inform the military judge of anticipated issues and to expeditiously resolve matters on which the parties can agree, not to litigate or decide contested issues." *United States v. Bevacqua*, 37 M.J. 996, 1003 (CGCMR 1993). Here, the record shows that the defense counsel opposed the Government's request for excludable delay and asserted Appellant's right to a speedy trial. The defense counsel did not, at any point on the record, agree to the Government's version of "facts." Therefore, the Government's motion should have been addressed during an Article 39(a) session on the record rather than in an 802 conference. Additionally, the Government presented nothing more than counsel's argument in its written motions. As the burden of proof was on the Government to establish good cause for delay, and it presented no evidence whatsoever, the military judge had no basis on which to make any findings of fact and no alternative but to deny the Government's request for delay. *See United States v. Facey*, 26 M.J. 421, 426 (C.M.A. 1988).

---

[9] The Government's supplemental pleading (also signed by a different counsel than those appearing at trial) continued to consistently misspell Appellant's name.

**Errors in Convening Authority's Action and Promulgating Order**

The Convening Authority's action fails to suspend confinement in excess of 150 days for twelve months from the date of that action as was required by the pre-trial agreement. The court-martial promulgating order not only contains the defective action, but it also incorrectly recites one of the pleas and findings from the trial. We have previously held that no relief was warranted despite an error in a promulgating order when the convening authority's action correctly approved the adjudged sentence. *See United States v. Williams*, 54 M.J. 757, 758 (C.G.Ct.Crim.App. 2001). Similarly, in *United States v. Sutphin*, we noted that the promulgating order did not correctly state the adjudged sentence, and directed that a corrected promulgating order be issued. *United States v. Sutphin*, 49 M.J. 534, 536 (C.G.Ct.Crim.App. 1998). In this case, the Convening Authority's action is also defective although Appellant has not asserted any prejudice by these errors. In *United States v. Bayle*, we noted that, although Article 66, UCMJ does not provide general authority for a court of criminal appeals to suspend a sentence, the Court of Military Appeals (now the Court of Appeals for the Armed Forces) recognized our authority to do so when a convening authority failed to comply with the terms of a pre-trial agreement requiring suspension of some part of a sentence. *United States v. Bayle,* 56 M.J. 762, 763 (C.G.Ct.Crim.App. 2002) (citing *United States v. Cox*, 22 USCMA 69, 46 CMR 69 (C.M.A. 1972)). We assert that authority now and, as provided by the pre-trial agreement, suspend all confinement in excess of 150 days for a period of twelve months from 24 April 2003, the date of the Convening Authority's original defective action. We also direct the Convening Authority to issue a revised promulgating order that reflects our action and correctly recites the pleas and findings.

Appendix 16 of the Manual for Courts-Martial (MCM), contains sample forms to be used as guides in preparing a convening authority's initial action. MCM, App. 16, United States (2002 ed.). Form 6 provides a sample of the proper form to be used for approval of an adjudged sentence when part of the sentence is suspended, as required in the case at bar. MCM, App. 16 Form 6, United States (2002 ed.). The preamble to Appendix 16 states, "Extreme care should be used in using these forms and in preparing actions." MCM, App. 16, United States (2002 ed.). We strongly encourage those involved in post-trial processing to use even greater care when they apparently choose to not use the samples provided in Appendix 16.[10] We share the Navy-Marine Corps Court of Criminal Appeals assessment that post-trial processing is not rocket science, and careful proof-reading of materials presented to the convening authority, rather than inattention to detail, would save time and effort for all concerned. *See United States v. Crumpley*, 49 M.J. 538, 539 n.3 (N.M.Ct.Crim.App. 1998).[11]

---

[10] Similarly, proper use of the sample specifications in Part IV of the MCM will avoid the need for last minute pen-and-ink changes, such as those made in the instant case, to ensure that charges and specifications contain boilerplate, but necessary, jurisdictional information.

[11] Along the same lines, we note that RCM 1001(b)(2) allows a trial counsel to introduce evidence from an accused's personnel record of an accused's marital status, number of dependents, and character of service during the sentencing phase of trial. The personnel data admitted as Prosecution Exhibits 2 and 3 during the Government's case on sentencing contain multiple copies of the same entries, in addition to many entries which appear to bear no relevance whatsoever to fashioning an appropriate sentence. We are unable to articulate any manner in which multiple copies of Appellant's Montgomery GI Bill enrollment form relate to his "character of service." We

**Conclusion**

We have reviewed the record in accordance with Article 66, UCMJ. Upon such review, the findings and sentence, except as discussed above, are determined to be correct in law and fact and, on the basis of the entire record, should be approved. Accordingly, the findings of guilty and the sentence as approved below are affirmed, except that confinement in excess of 150 days is suspended for twelve months from 24 April 2003. The Convening Authority shall issue a revised promulgating order in accordance with this opinion.

KANTOR, Judge, concurs

BAUM, Chief Judge, (concurring in part and dissenting in part):

I concur with Judge Cahill's account of the errors noted in the record. However, rather than join in the action he has taken to comply with the pre-trial agreement's suspension requirement, I would disapprove all confinement in excess of that already served. Given the indifferent attitude displayed by the Government in the pre-trial processing of this case, coupled with the Convening Authority's unexplained failure to comply with the terms of Appellant's plea agreement, I would, at this point, ensure that no confinement remains for possible future execution, based on a vacation of suspension. I see no reason to reward the Government's failure to comply with a pre-trial agreement's suspension provision by taking action in the Convening Authority's behalf at this late date.

Aside from this glaring failure by the Convening Authority, among the other errors noted by Judge Cahill, the most serious failing, in my view, was the Government's inaction after ordering Appellant restricted on 11 September 2002 and later confined on 11 December 2002.[12] RCM 707(a) requires that an accused by brought to trial within 120 days after such restraint has been imposed, but charges were not even preferred in this case until three months had elapsed. Then, after 114 days, the Government requested a trial date on the very last day allowed, but later indicated through a motion for delay that, even at that late date, the Government was not ready for trial.

I believe it is wrong to order a person restricted in September and not prefer charges until December when there is evidence of offenses available at the time of restriction. Just as the Convening Authority and/or legal support personnel failed to do right by Appellant after trial, it looks to me as if the same kind of neglect occurred before trial also. I strongly recommend that the Judge Advocate General look into the problems revealed by this record when he inspects the responsible field units pursuant to Article 6, UCMJ. It may be possible that the problems noted can be attributed in some part to the legal support arrangement that provides trial counsel and a

---

strongly encourage trial counsels to review personnel data records and offer only one copy of those entries that bear some relevance to the proceedings instead of introducing "raw" data that does nothing more than add volume to a record of trial. Page numbers ("Page X of XX") would also be appreciated.

[12] The pre-trial confinement date of 11 December 2002 is consistent with the military judge's "802 Conference Memorandum; Decision and Order on Government Request for Delay."

staff judge advocate from the Maintenance and Logistics Command Pacific, in Alameda, California, to a convening authority far removed in Seattle, Washington. If so, an inspection in furtherance of the Judge Advocate General's responsibility to supervise the administration of military justice may uncover correctible organizational defects that may prevent similar problems in the future.



For the Court,

Roy Shannon Jr.
Clerk of the Court