# UNITED STATES COAST GUARD COURT OF CRIMINAL APPEALS
## Washington, D.C.

## UNITED STATES

### v.

## Christopher L. WARNER
### Seaman Apprentice (E-2), U.S. Coast Guard

## CGCMS 24248

## Docket No.  1187

## 7 October 2003

Special Court-Martial convened by Commanding Officer, Coast Guard Integrated Support Command Seattle.  Tried at Seattle, Washington, on 13 February 2003.

| | |
|---|---|
| Military Judge: | CDR Michael E. Tousley, USCG |
| Trial Counsel: | LT Michelle C. Bas, USCG |
| Detailed Defense Counsel: | LT Hollis M. Nickens, JAGC, USNR |
| Appellate Defense Counsel: | LCDR Nancy J. Truax, USCG |
| Appellate Government Counsel: | LCDR John S. Luce Jr., USCG |

### BEFORE
### PANEL TEN
### BAUM, McCLELLAND, & CAHILL
Appellate Military Judges

CAHILL, Judge:

Appellant was tried by special court-martial, military judge alone.  Pursuant to a pretrial agreement, Appellant entered pleas of guilty to one specification of unauthorized absence in violation of Article 86, Uniform Code of Military Justice (UCMJ) and one specification of use of "MDA and MDMA (Ecstasy), a Schedule I controlled substances [sic] and MET, a Schedule II controlled substance" in violation of Article 112a, UCMJ.  The military judge accepted Appellant's pleas, entered findings of guilty to those offenses, and sentenced Appellant to a bad-conduct discharge.  Appellant pled not guilty to one specification of distribution of "MDA and MDMA (Ecstasy), Schedule I controlled substances and MET, a Schedule II controlled substance."  The Government presented no evidence of that offense, and the military judge dismissed that specification prior to adjournment.[1]  The Convening Authority approved the sentence as adjudged, as allowed by the pretrial agreement.[2]

---

[1] Under the pretrial agreement, the Government could have attempted to prove this specification.  After the military judge accepted Appellant's pleas, he asked the trial counsel if the Government intended to go forward on this specification.  The trial counsel responded in the negative, but asked the military judge to wait to "dismiss it prior to

Appellant submits this case on its merits. Although we find the findings and sentence to be correct in law and fact, and affirm, we believe this case raises several issues that warrant further discussion.

**Facts**

Appellant enlisted in the Coast Guard on 22 October 2001. In an unsworn statement at trial, Appellant indicated that he came from a family with a history of violence, physical abuse, and drug abuse. Appellant disclosed prior drug use at the time of his enlistment. He entered Storekeeper (SK) Class 'A' school following completion of recruit training. In March 2002, Appellant was disenrolled from school due to misconduct and transferred to USCGC MIDGETT (WHEC 726). Although it is not clear from the record, Appellant was apparently transferred to Integrated Support Command (ISC) Seattle prior to committing the offenses for which he was tried by court-martial. His supervisor, a defense sentencing witness, testified "that [Appellant] was removed from his unit. He'd used narcotics, and that he was placed at ISC [Seattle] awaiting further disciplinary action." According to his medical record, which was admitted as a defense exhibit, he underwent medical evaluation after expressing suicidal ideations in late July 2002. Appellant failed to report for duty at ISC Seattle on Monday, 16 September 2001. Later that day, Appellant contacted the ISC Seattle duty officer by telephone, and reported that he and a fellow Coast Guardsman had taken drugs. Appellant said that he experienced hallucinations, including believing that he was talking to God and that the fellow Coast Guardsman had jumped off a balcony and stopped breathing. Appellant was unable to say where he was so that the duty officer could send assistance.

Appellant voluntarily returned to ISC Seattle the following day, provided a urine sample, and was sent to Madigan Army Hospital for evaluation. His urine sample tested positive for MDMA (Ecstasy) and methamphetamine. On 18 September 2002, Appellant was interviewed by a Coast Guard Investigative Service agent. Following advisement of his rights under Article 31(b), UCMJ, Appellant admitted that he used illegal drugs and was absent without authority on 16 September 2002. He was placed in pretrial restriction on 17 September 2002, and, except for five days of leave during the holidays, remained continuously in pretrial restriction until 2 January 2003.

Charges were not preferred until 10 December 2002, and were referred for trial by special court-martial on 11 December 2002. Defense counsel was detailed on 7 January 2003. In a conference pursuant to Rule for Courts-Martial (RCM) 802, Manual for Courts-Martial, United States, (2002 ed.), on 8 January 2003, trial counsel requested a trial date of 15 January 2003. Trial defense counsel asked for additional time to prepare for trial. The military judge set a trial date of 13 February 2003, and approved delay from 15 January 2003 to 13 February 2003,

---

conclusion of the court-martial." The military judge agreed to do so without objection from trial defense counsel. We believe a better approach would have been for the Government to withdraw the specification before findings; if the Government declined to do so, the military judge should have entered a finding of not guilty for this specification when he announced findings.

[2] The pretrial agreement allowed the Convening Authority to approve all punishment as adjudged, but required suspension of confinement in excess of thirty days for a period of twelve months.

excluding it for speedy trial purposes under RCM 707. In February 2003, detailed defense counsel asked that Appellant be examined under RCM 706 to determine his mental responsibility at the time of the offenses and his competency to stand trial. An examination concluded that Appellant suffered from poly-substance abuse, but did not suffer from a mental disease or defect at the time of the offenses, was able to appreciate the nature and wrongfulness of his conduct, and had the capacity to stand trial.

## Pretrial Restriction and Unlawful Pretrial Punishment

RCM 304 sets forth types of pretrial restraint and the circumstances under which pretrial restraint may be imposed. It describes restriction in lieu of arrest as "oral or written orders directing the person to remain within specified limits" while continuing to perform full military duties unless directed otherwise. RCM 304(a)(2). Restriction in lieu of arrest is a less severe form of restraint than arrest or confinement, but more severe than conditions on liberty. *See* Discussion following RCM 304(a). Pretrial restraint may not be imposed unless there is probable cause to believe that an offense triable by court-martial was committed, the person subject to the restraint committed it, and restraint is required by the circumstances. RCM 304(c). RCM 304(f) expressly prohibits use of pretrial restraint as punishment. It is well settled that restriction in lieu of arrest may be so onerous that it is tantamount to confinement and justifies award of credit against a sentence. *United States v. Mason*, 19 M.J. 274 (C.M.A. 1985).

Under RCM 707, an accused must be brought to trial within 120 days of the earlier of preferral of charges or imposition of pretrial restriction in lieu of arrest, arrest, or confinement. RCM 707(a). If an accused is ordered into arrest or confinement, Article 10, UCMJ, requires that "immediate steps" be taken to inform the accused of the specific wrongs of which he or she is accused and bring the case to trial or dismiss the charges and release the person from restraint. It is now well-settled that Article 10's mandate of "immediate steps" imposes a greater obligation than RCM 707's 120-day limit, and requires the government to proceed with "reasonable diligence". *See United States v. Kossman*, 38 M.J. 258, 262 (C.M.A. 1993); *United States v. Laminman*, 41 M.J. 518, 519 (C.G.Ct.Crim.App. 1994). An "overall lack of forward motion" violates Article 10, UCMJ, even if in compliance with RCM 707. *United States v. Hatfield*, 44 M.J. 22, 24 (C.A.A.F. 1996). However, Article 10, UCMJ, does not apply to an accused, such as the Appellant in the instant case, placed in restriction in lieu of arrest rather than arrest or confinement.

Article 13, UCMJ, provides, "No person, while being held for trial, may be subjected to punishment or penalty other than arrest or confinement upon the charges pending against him, nor shall the arrest or confinement be more rigorous than the circumstances required to insure his presence . . ." Unlike Article 10, UCMJ, Article 13 UCMJ, applies to any service member "held for trial" and is not limited to persons placed in pretrial confinement or arrest. *United States v. Combs*, 47 M.J. 330, 333 (C.A.A.F. 1997). A military member may be considered "held for trial" even though charges have not yet been preferred if the member is "pending trial" and subject to substantial burdens on his or her freedom of movement. *United States v. Starr*, 51 M.J. 528, 533 (A.F.Ct.Crim.App. 1999).

A particular measure constitutes unlawful pretrial punishment in violation of Article 13, UCMJ, if it is "done with the intent to punish or stigmatize a person awaiting disciplinary disposition." *United States v. Phillips*, 42 M.J. 346, 349 (C.A.A.F. 1995) (citing *United States v. Bayhand*, 6 USCMA 762, 21 CMR 84 (C.M.A. 1956); *Thacker v. United States*, 16 M.J. 841 (NMCMR 1983); and *United States v. Southers*, 12 M.J. 924, 927 (NMCMR 1982)). Courts have found a number of things to constitute unlawful pretrial punishment in violation of Article 13, UCMJ. *See, e.g., United States v. Cruz*, 25 M.J. 326 (C.M.A. 1987) (public apprehension and denunciation, removal of unit crest, and assignment to a separate unit known as "Peyote Platoon"); *United States v. Villamil-Perez*, 32 M.J. 341, 342 (C.M.A. 1991) (posting incident report and other derogatory information on unit bulletin board); *United States v. Stringer,* 55 M.J. 92, 93 (C.A.A.F. 2001) (public apprehension and degrading comments); *United States v. Spaustat*, 57 M.J. 256, 257 (C.A.A.F. 2002) (removal of rank insignia). On the other hand, measures intended to further a legitimate non-punitive purpose do not violate Article 13, UCMJ. *United States v. Starr*, 53 M.J. 380, 381 (C.A.A.F. 2002) (reassignment to special unit and order to surrender security police beret). Whether a particular measure is unlawful pretrial punishment raises both statutory and constitutional concerns, and is a mixed question of law and fact. *United States v. McCarthy,* 47 M.J. 162, 165 (C.A.A.F. 1997). Therefore, when a violation of Article 13, UCMJ, is alleged, the court must look at evidence of the particular circumstances and the government's asserted legitimate interest to determine intent. As the Court of Appeals for the Armed Forces noted in *United States v. Fricke*, "if a restriction or condition is not reasonably related to a legitimate [government] goal . . . a court permissibly may infer that the purpose of the governmental action is punishment that may not constitutionally be inflicted upon detainees *qua* detainees**."** *United States v. Fricke*, 53 M.J. 149, 155 (C.A.A.F. 2000) (quoting *Bell v. Wolfish*, 441 U.S. 520, 539; 99 S. Ct. 1861, 1874; 60 L. Ed. 2d 447, 468 (1979)).

Appellant was ordered into pretrial restraint on 17 September 2002, triggering RCM 707's requirement to bring him to trial within 120 days.[3] Although this appears to be a fairly simple case in which the Government had sufficient information to proceed within days of the offenses, charges were not preferred until 10 December 2002, almost three months later. Almost another month passed before Appellant was provided the assistance of counsel. We believe, similar to the analysis discussed above for violations of Article 10, UCMJ, the Government should not place a member in pretrial restriction and view RCM 707 as providing a grace period before it must take further action.[4] As the then-Court of Military Appeals noted in *Kossman*, "We happen to think that 3 months is a long time to languish in a brig awaiting an opportunity to confront one's accusers." *United States v. Kossman*, 38 M.J. 258, 261 (C.M.A. 1993). We think that 3 months is also a long time to be restricted to the limits of most Coast Guard units with no apparent movement toward trial. Failure to proceed with *any* diligence, never mind reasonable diligence, creates the appearance that the pretrial restriction, even though initially in compliance with RCM 304, is more rigorous than necessary and is intended to unlawfully punish the detainee in violation of Article 13, UCMJ, and RCM 304(f). Simply put, lengthy pretrial

---

[3] We do not address the effect of Appellant's eventual release from pretrial restraint on 2 January 2003 on the 120-day period under RCM 707(b)(3).

[4] We note that *United States v. Suksdorf*, in which we expressed our concerns that the government was less than candid when it requested to hold trial on the day RCM 707's speedy trial clock was set to expire and then almost immediately asked for further delay, involved the same Convening Authority and Staff Judge Advocate as the instant case. *United States v. Suksdorf,* 59 M.J. 544 (C.G.Ct.Crim.App. 2003).

restraint combined with unexplained pretrial delay invites an inference that the government is using illegal pretrial punishment to unlawfully enhance the sentence which may be imposed at trial.

However, this issue is not presented to us.  During argument on sentence, trial defense counsel asked the military judge to take into consideration that Appellant served 108 days of pretrial restriction.  In *United States v. Inong,* the Court of Appeals for the Armed Forces held that an appellant may not seek sentence credit for pretrial punishment on appeal if he or she made a tactical decision to complain at trial about conditions of pretrial restraint in an effort to obtain a lesser adjudged sentence.  *United States v. Inong,* 58 M.J. 460, 463 (C.A.A.F. 2003).  Appellant appears to have made a successful tactical decision by asking the military judge to consider the duration of pretrial restriction because the adjudged sentence did not include confinement.  Therefore, even if asserted as error on appeal, we believe Appellant would be precluded from seeking credit on appeal for unlawful pretrial punishment.  Additionally, in *United States v. King*, the Court of Appeals for the Armed Forces held that failure to seek credit at trial for pretrial restriction tantamount to confinement constitutes waiver of that issue in the absence of plain error.  *United States v. King*, 58 M.J. 110, 114 (C.A.A.F. 2003).  We do not see plain error in this record.  Trial defense counsel expressly acknowledged that the conditions of Appellant's restriction were not tantamount to confinement.  *King* also recognized that a trial court is in the best position to fully develop a factual record.  *King,* 58 M.J. at 114.  We believe that similar circumstances, fully developed at trial and properly preserved for appeal, could support a conclusion that lengthy pretrial restriction constituted illegal pretrial punishment in violation of Article 13, UCMJ and RCM 304(f).

### Incorrect Advice on Maximum Punishment

At several points during the trial, with concurrence from both counsel, the military judge advised Appellant that the maximum possible sentence included "total forfeitures" in addition to confinement, reduction in rate, and a bad-conduct discharge.  Article 19, UCMJ, as amended by the National Defense Authorization Act of Fiscal Year 2000, P.L. No. 106-65, § 577 (1999), establishes the jurisdiction of a special court-martial.  It limits forfeitures of pay to two-thirds pay per month, not to exceed one year.  These limits are incorporated in RCM 201(f)(2)(B)(i).  Therefore, the military judge's advice as to the maximum forfeitures which he could adjudge was incorrect.  However, based on our review of the entire record, we believe this error did not affect the providency of Appellant's pleas.  *See United States v. Hunt*, 10 M.J. 222, 223 (C.M.A. 1981); *United States v. Mincey*, 42 M.J. 376, 378 (C.A.A.F. 1995).

### Improper Cross-Examination on Rehabilitative Potential

During the sentencing phase of trial, Appellant called his supervisor, a civilian Coast Guard employee, to testify on his behalf.  On direct examination, trial defense counsel established that the supervisor had served on active duty in the Coast Guard for four years, and had recently been discharged under honorable conditions.  The supervisor testified that Appellant was an excellent worker who sought advice on achieving a "healthy lifestyle" through exercise, improved nutrition, and stress management.  When asked, without objection from the trial counsel, if he had an opinion as to Appellant's rehabilitative potential, he said that Appellant had

"taken the right steps . . . to better his future after the Coast Guard." On cross-examination, trial counsel asked the witness if he was familiar with the "Coast Guard's drug policy" and whether Appellant had "rehabilitative potential <u>in the Coast Guard</u>, given his drug abuse?" (emphasis added). When the witness reiterated his opinion that Appellant had rehabilitative potential, trial counsel asked if he understood that illicit drug use was "contrary to the [Coast Guard's] core mission" and drug use "can create problems in efficiency and otherwise for the chain of command?" The military judge then overruled a defense objection that the questions called for inadmissible evidence in aggravation.

As the Court of Military Appeals held in *United States v. Ohrt*, RCM 1001(b)(5) permits a trial counsel to introduce evidence of an accused's rehabilitative potential. *United States v. Ohrt,* 28 M.J. 301, 303 (C.M.A. 1989). Such evidence may be in the form of an opinion if a proper foundation is laid to show that the witness has personal knowledge of an accused's character, performance, and other relevant factors. *Ohrt,* 28 M.J. at 304. The Court also held that, although rehabilitative potential is "inextricably related" to whether an accused should be retained in military service or awarded a punitive discharge, a witness should not be allowed to express an opinion as to whether an accused should be given a punitive discharge or returned to his or her unit. 28 M.J. at 304-05. Other euphemisms for a punitive discharge are also prohibited. *Id.* at 305.

In *United States v. Williams*, the Court of Appeals for the Armed Forces discussed post-*Ohrt* changes to RCM 1001(b)(5). *United States v. Williams*, 50 M.J. 397, 399-400 (C.A.A.F. 1999). The Court noted that RCM 1001(b)(5) defines rehabilitative potential in terms of an accused's potential to be restored to a "useful and constructive place in society," and RCM 1001(b)(5)(D) expressly prohibits a witness from offering an opinion on whether an accused should be given a punitive discharge or returned to his or her unit. *Williams,* 50 M.J. at 400.

We believe that trial counsel, intentionally or unintentionally, improperly linked the witness' opinion on rehabilitative potential with award of a punitive discharge when she focused on Appellant's "rehabilitative potential in the Coast Guard," and referred to the "Coast Guard's drug policy" and incompatibility of drug use with a Coast Guard "core mission."[5] Although trial counsel's questions were improper, we find any error to be harmless. First, the witness refused to change his positive opinion of Appellant's potential for rehabilitation during cross-examination. Second, as in *Williams*, trial in this case was before military judge alone and the military judge is presumed to know and follow the constraints of *Ohrt* and RCM 1001(b)(5). Finally, the trial counsel did not introduce any improper evidence of Appellant's purported lack of rehabilitative potential during the Government's sentencing case or in rebuttal.

---

[5] We strongly encourage trial practitioners to familiarize themselves with the concept of rehabilitative potential as embodied in RCM 1001(b)(5). "Rehabilitation" evidence is frequently misused. We believe it would be difficult to establish that a one-day unauthorized absence and a single specification of illegal drug use, standing alone, support the conclusion that an accused could never achieve a useful and constructive place in society despite vocational, correctional, therapeutic, or other measures envisioned by RCM 1001(b)(5).

## Conclusion

We have reviewed the record in accordance with Article 66, UCMJ. Upon such review, the findings and sentence are determined to be correct in law and fact and, on the basis of the entire record, should be approved. Accordingly, the findings of guilty and the sentence as approved below are affirmed.

BAUM, Chief Judge concurring:

I join in Judge Cahill's opinion and write only to express my concern with the delay in the assignment of a defense counsel to this case. As Judge Cahill points out, it took almost 90 days from the date offenses were known until charges were preferred and referred to trial. Moreover, although Appellant was restricted during that period, there is no indication in the record that Appellant had access to counsel. Furthermore, even after charges were referred to trial, it took almost another month before a counsel was detailed to represent Appellant. This kind of delay in providing an accused the assistance of counsel after offenses are known, and restraint imposed, undermines the system of protections written into the Uniform Code of Military Justice (UCMJ) by Congress for persons accused of crimes. It is particularly egregious in this case where speedy trial and possible unlawful pretrial punishment could have been potential issues. Whatever the reason, nothing was done at trial to raise those subjects, or anything else for that matter, that may have related to the delay in providing counsel for Appellant.

Judge Cahill has pointed to case law standing for the proposition that issues relating to credit for pretrial punishment and restriction tantamount to confinement should be raised at trial in order to be considered on appeal. In this case, counsel indicated that this was her first court-martial, which gives me pause when considering whether trial inaction was the result of a tactical decision or whether waiver should be applied. In any event, it would seem almost impossible at this late date to develop facts necessary to support the issues that were not raised. Furthermore, even if we were to determine that Appellant's restriction was tantamount to confinement or that it constituted pretrial punishment, no confinement was adjudged against which credit could be applied. Accordingly, I concur with Judge Cahill's disposition of the case. I do recommend, however, that the Judge Advocate General add the problems discussed here to the list of matters suggested in my separate opinion in *United States v. Suksdorf*, 59 M.J. 544 (C.G.Ct.Crim.App. 2003) for scrutiny during the next inspection under Article 6, UCMJ, since *United States v. Suksdorf* involved the same Convening Authority and Staff Judge Advocate as the instant case.

McCLELLAND, Judge, concurs in both the majority and the concurring opinions.



For the Court,


Roy Shannon Jr.
Clerk of the Court