# UNITED STATES COAST GUARD COURT OF CRIMINAL APPEALS
## Washington, D.C.

## UNITED STATES

v.

## Mark B. HOLZ
### Seaman Food Service Specialist (E-3), U.S. Coast Guard

## CGCMS 24260

## Docket No. 1198

## 18 May 2004

Special Court-Martial convened by Commanding Officer, Coast Guard Integrated Support Command Seattle. Tried at Seattle, Washington, on 22 May 2003.

| | |
|---|---|
| Military Judge: | CDR Brian M. Judge, USCG |
| Trial Counsel: | LT Shawn C. Gray, USCG |
| Detailed Defense Counsel: | LT Matthew F. Hebard, JAGC, USNR |
| Appellate Defense Counsel: | LCDR Nancy J. Truax, USCG |
| Appellate Government Counsel: | LT Sandra J. Miracle, USCG |

## BEFORE
## PANEL TEN
## BAUM, CAHILL, & McCLELLAND
Appellate Military Judges

CAHILL, Judge:

Appellant was tried by special court-martial, military judge alone. Pursuant to a pretrial agreement, Appellant entered pleas of guilty to one specification of wrongful use of marijuana, two specifications of wrongful distribution of marijuana, and one specification of wrongful introduction of marijuana onto an installation under the control of the armed forces, in violation of Article 112a, Uniform Code of Military Justice (UCMJ).[1] The military judge accepted

---

[1] Appellant was charged with introduction with intent to distribute marijuana, but pled guilty by exceptions and substitutions only to introduction. The Government presented no evidence that Appellant introduced marijuana onto a military installation with the intent to distribute. Appellant also pled not guilty to one specification alleging that he wrongfully used cocaine and methamphetamine on divers occasions throughout his entire enlistment in the Coast Guard. The Government presented no evidence concerning that specification, and the military judge entered a finding of not guilty.

Appellant's pleas, entered findings of guilty to those offenses, and sentenced Appellant to a bad-conduct discharge, sixty days confinement, and reduction to E-1. The Convening Authority approved the sentence as adjudged, as allowed by the pretrial agreement. The Convening Authority credited Appellant with eight days of confinement pursuant to *United States v. Allen*, 17 M.J. 126 (C.M.A. 1984).

On appeal, Appellant asserts that his pretrial restriction was restriction tantamount to confinement in violation of Article 13, UCMJ and Rule for Court-Martial (R.C.M.) 304(f), Manual for Courts-Martial, United States, (2002 ed.), because the conditions of the restriction were the same as for those serving restriction as a result of non-judicial punishment or court-martial, the restriction was not intended to insure his presence at trial, the conditions of the restriction were redefined daily at the whim of the command duty officer in contravention of the express direction of letter of restriction, and the restriction was overly lengthy. After careful consideration, we reject Appellant's claims. We find the findings and sentence to be correct in law and fact and affirm.

**Facts**

Appellant enlisted in the Coast Guard on 24 August 1999 and was promoted to Petty Officer Third Class after he completed Food Services Class 'A' school. He was then assigned to USCGC POLAR SEA (WAGB 11). According to medical records admitted at trial, he suffered a closed head injury from an apparent blow to the head while in a liberty status on 19 April 2002. As a result, he experienced balance, speech, and memory problems, cognitive and emotional difficulties, and recurring headaches. He was then reassigned to Integrated Support Command (ISC) Seattle. On 23 August 2002, he received a Good Conduct Award. On 15 October 2002, he was reduced to paygrade E-3 as a result of non-judicial punishment imposed for minor misconduct. That same day, a bag of marijuana was found in his car when he drove on board ISC Seattle. He was placed in pretrial restriction at ISC Seattle the following day. On 12 December 2002, apparently following receipt of a positive urinalysis result, Appellant was placed in pretrial confinement, but was released seven days later following a hearing before an Initial Reviewing Officer. He was then again ordered to be restricted to the limits of ISC Seattle,

and remained restricted until trial on 22 May 2003 – a total of 219 days of pretrial restriction in addition to eight days of pretrial confinement.

Charges were not preferred and referred for trial until 13 January 2003, almost three months after Appellant was placed in pretrial restraint. Defense counsel was then detailed to represent him.[2] A military judge was detailed to preside over this case on 17 January 2003, and held an initial pretrial conference pursuant to R.C.M. 802 on 21 January 2003. Trial counsel requested a trial date of 6 February 2003. Detailed defense counsel asserted Appellant's right to a speedy trial under R.C.M. 707 and requested that he be brought to trial between 27 and 30 January 2003. However, the military judge was not available during the period requested by detailed defense counsel. Detailed defense counsel indicated that he was not available again until 3 March 2003, and trial was set for that date. Trial counsel also requested that the time from 21 January 2003 to 3 March 2003 be excluded for speedy trial purposes under R.C.M. 707, claiming that delay was needed to allow for trials of two possible material witnesses against Appellant. Detailed defense counsel opposed the request and again asserted Appellant's right to a speedy trial. Detailed defense counsel later indicated that he had become available for trial during the week of 10 February 2003, but trial counsel was not available due to scheduled trials for others charged with similar offenses at ISC Seattle.

The military judge issued a written order and findings on 29 January 2003. He found that there were no facts in dispute, and held that the time from 21 January 2003 to 6 February 2003, the Government's requested trial date, was not excluded under R.C.M. 707. He also held that the Government's desire to complete the trial of potential witnesses amounted to good cause and that the time from 6 February 2003 through 3 March 2003 was excludable for speedy trial purposes. On 13 February 2003, detailed defense counsel filed a motion requesting that the military judge order an inquiry into Appellant's mental capacity and mental responsibility under R.C.M. 706. The Government did not oppose the request, and, on 20 February 2003, the military judge issued

---

[2] A letter dated 16 January 2003 from Commanding Officer, Navy Legal Service Office Northwest, to Commander, Maintenance and Logistics Command Pacific, indicated that LT Hebard was assigned as detailed defense counsel and was authorized to enter into an attorney-client relationship with Appellant.

an order directing that a board be convened to examine the accused. The examination was delayed because the nearest military medical treatment facility was involved in processing troops for deployment to Iraq. Although the record does not contain the board's statement, the parties indicated on the record at trial that the board submitted its report in early May and found that Appellant understood the nature and consequences of his actions and was competent to stand trial. Trial was then set for 22 May 2003, and the military judge ruled that the period from 7 February 2003 until 22 May 2003 was excluded for speedy trial purposes.

At trial, detailed defense counsel moved for a finding that Appellant's pretrial restriction was unlawful pretrial punishment in violation of Article 13, UCMJ, and restriction tantamount to confinement for which Appellant should receive credit. Appellant testified about the conditions of his restriction. He was required to remain in the uniform of the day until 2200 each night and muster four times each day with other persons that were restricted pretrial, post-trial, or as a result of non-judicial punishment. Written approval was required for visitors from outside ISC Seattle. Although he was generally free to move about the limits of ISC Seattle, different command duty officers imposed differing restrictions on his use of the gym and other recreational facilities. In mid-December, he was ordered into pretrial confinement but released following a hearing before an Initial Reviewing Officer. He was again ordered into restriction and denied leave during the holidays. Others at ISC Seattle were aware that Appellant was restricted due to involvement with drugs and considered him a "bad seed." Appellant continued to perform his normal duties in the ISC Seattle galley until the galley was closed, and he was then assigned to the port operations department. He ate breakfast and lunch in the galley but was given a box lunch for the evening meal because the galley was not open in the evening. During cross-examination, detailed defense counsel objected to the trial counsel's questions about the positive urinalysis result that preceded the imposition of pretrial confinement. The military judge sustained the objection after detailed defense counsel expressly disclaimed that he was questioning the validity of the pretrial restraint and reiterated that he was seeking credit based only upon the conditions of the restriction.

---

A separate memorandum dated 30 January 2003 from Staff Judge Advocate, Maintenance and Logistics

The military judge, citing *United States v. King*, 58 M.J. 110 (C.A.A.F. 2003), denied Appellant's request for administrative credit and prepared written findings of fact and conclusions of law that were added to the record after the trial. The military judge concluded that the terms of the restriction were not intended to punish or stigmatize Appellant and did not constitute restriction tantamount to confinement or illegal pretrial punishment. He also indicated that he considered the extended period of Appellant's pretrial restraint in determining an appropriate sentence.

### Discussion

The issues of whether Appellant's pretrial restraint was restriction tantamount to confinement or unlawful pretrial punishment were fully litigated at trial and the record is fully developed. Although Appellant combines these issues on appeal, they are separate issues involving mixed questions of law and fact. We review the military judge's findings of fact to determine if they are clearly erroneous and review his conclusions of law *de novo*. *United States v. Ayala*, 43 M.J. 296, 298 (C.A.A.F. 1995). Specifically, the military judge found that Appellant was assigned to the same type of Bachelor Enlisted Quarter (BEQ) room as others assigned to ISC Seattle, he performed normal military duties throughout the period of restriction and was not required to perform extra duties, he was allowed to move about ISC Seattle without escort and was permitted to attend off-base church services with an escort, and he was permitted to use base payphones. The military judge also found that any negative comments about Appellant did not come from the command cadre at ISC Seattle or other senior personnel.

We believe the military judge's findings of fact are supported by the record, and we concur with his conclusions that the nature of Appellant's restriction was not tantamount to confinement. In *United States v. King*, the Court of Appeals for the Armed Forces identified a number of factors to consider in determining whether restriction was tantamount to confinement. *United States v. King*, 58 M.J. 110, 113 (C.A.A.F. 2003), *overruled in part by United States v. Rendon*, 58 M.J. 221, 225 (C.A.A.F. 2003). These factors include the nature of the restraint, the area or scope of the restraint, the types of duties performed during the restraint, and the degree of privacy enjoyed within the area of restraint. *King*, 58 M.J. at 113. The Court also identified a

---

Command Pacific, to LT Hebard also detailed him to represent Appellant.

number of conditions affecting these factors. 58 M.J. at 113. After applying these *King* factors to the present case, we reject Appellant's assignment of error that the restriction was tantamount to confinement in violation of R.C.M. 304(f). The record demonstrates that Appellant was subject to moral restraint with reasonable musters to confirm his presence. He had access to most facilities at ISC Seattle, and he performed normal military duties. He had the same level of privacy as other residents of ISC Seattle's BEQ. Therefore, we hold that the military judge properly denied Appellant's request for administrative credit for restriction tantamount to confinement.

We also agree that Appellant was not subjected to unlawful pretrial punishment in violation of Article 13, UCMJ. In *United States v. Palmiter,* the Court of Military Appeals recognized that it is not always possible to ensure total separation of those in pretrial confinement from those serving court-martial sentences given the limited facilities and programs available in confinement institutions. *United States v. Palmiter,* 20 M.J. 90, 94 (C.M.A. 1985). This may be especially true for those in lesser forms of restraint at many Coast Guard installations. Similarly, in *United States v. Corteguera,* the Court of Appeals for the Armed Forces held that assigning the same or similar work to pretrial confinees and sentenced prisoners was not *per se* unlawful pretrial punishment, but rather the nature, purpose, and duration of duties performed by the pretrial detainee are determinative of punitive intent. *United States v. Corteguera,* 56 M.J. 330, 335 (C.A.A.F. 2002). As discussed above, Appellant resided in a standard BEQ room and performed normal military duties. Additionally, while inconsistencies in enforcing terms of restriction could reflect punitive intent, we decline to hold that minor variations between duty officers are *per se* unlawful pretrial punishment. Nothing in the record leads us to conclude that the conditions of Appellant's pretrial restriction or variations in how the terms of his restriction were enforced were intended as punitive.

Appellant raises for the first time on appeal that the restriction was not intended to insure his presence at trial and was overly lengthy. As we discussed in *United States v. Warner*, R.C.M. 304(c) provides that pretrial restraint may not be imposed unless restraint is required by the circumstances. *United States v. Warner*, 59 M.J. 590, 592 (C.G.Ct.Crim.App. 2003). The

Discussion following R.C.M. 304(c) indicates that the decision to impose pretrial restraint should be made on a case-by-case basis, and the conditions of restraint should be no more rigorous than necessary to ensure presence for trial or to prevent foreseeable serious criminal misconduct. R.C.M. 304(f) expressly prohibits use of pretrial restraint as punishment.

A trial court is in the best position to fully develop a factual record on issues surrounding pretrial restraint. *King,* 58 M.J. at 114. An appellant may not seek sentence credit for pretrial punishment on appeal if he or she made a tactical decision to complain at trial about conditions of pretrial restraint in an effort to obtain a lesser adjudged sentence. *United States v. Inong,* 58 M.J. 460, 463 (C.A.A.F 2003). In the present case, the conditions of Appellant's pretrial restraint were fully litigated at trial. Detailed defense counsel appears to have made a tactical decision to avoid introduction of uncharged misconduct when he expressly indicated that he was not challenging the validity or duration of Appellant's pretrial restraint.[3] Detailed defense counsel also reminded the military judge of the duration of Appellant's pretrial restraint during the defense sentencing case, and the military judge indicated that he considered the duration of the pretrial restraint when he adjudged sentence. We do not see that the validity or duration of Appellant's pretrial restraint amounts to plain error, and we reject that assignment of error.

We recognize the challenges that may be involved in investigating misconduct by numerous members of a command and bringing multiple cases to trial. However, we reiterate the concerns we expressed in *Suksdorf* and *Warner,* which involved the same Convening Authority and Staff Judge Advocate, that almost three months elapsed from when Appellant was

---

[3] Although we do not find it necessary to decide this case, we permitted the Government to submit a post-trial affidavit from the Chief of the Military Justice Section at Maintenance and Logistics Command Pacific, the servicing legal office for ISC Seattle. In that affidavit, the affiant avers that an investigation revealed wrongful drug use by six crewmembers at ISC Seattle during September and October 2002, and all six were placed in pretrial restraint. All except Appellant and one other member were permitted to take leave and released from pretrial restraint in December 2002 or January 2003, prior to their trials. Appellant and the other member were not released from pretrial restraint after positive urinalysis results in late November 2002 or early December 2002 indicated they had engaged in misconduct while in pretrial restriction. We believe such facts, if established at trial, would provide a lawful basis for continued pretrial restraint.

placed in pretrial restraint until charges were preferred and he was provided the assistance of counsel. *See United States v. Suksdorf*, 59 MJ 544 (C.G.Ct.Crim.App. 2003); *United States v. Warner*, 59 M.J. 590 (C.G.Ct.Crim.App. 2003). Such delays create an appearance of unfairness in the military justice system. Convening authorities, trial counsels, and staff judge advocates are responsible for ensuring the timely and efficient administration of justice, including the timely assignment of counsel. R.C.M. 306(b) provides that allegations of offenses should be disposed of in a timely manner. R.C.M. 401(b) requires a commander to promptly determine disposition following receipt of charges. The Discussion following R.C.M. 707(a)(1) indicates that "[O]ffenses ordinarily should be disposed of promptly to serve the interests of good order and discipline." Similarly, the Discussion following R.C.M. 307(a) states that charges should be preferred without unnecessary delay, but reasonable delay is permitted for good reason such as to permit the discovery of co-conspirators. In the present case, any co-conspirators would have been alerted when Appellant was placed in pretrial restraint after marijuana was discovered in his car as he entered ISC Seattle, so delay in preferral of at least one charge and specification does not appear to have been necessary for investigative purposes. R.C.M. 307 allows for preferral of additional charges for offenses not known at the time or committed after original charges were preferred, so additional offenses uncovered during the course of an investigation could have been separately charged. *See* R.C.M. 307(c)(2) Discussion. In a post-trial affidavit, the Chief of the Military Justice Section at Maintenance and Logistics Command Pacific indicated that, as a standard practice, no request is made for assignment of counsel until charges are preferred. Therefore, prompt preferral of charges is especially critical if a person is held in pretrial restraint and preferral is used as the trigger for assignment of counsel.

The military judge, once detailed, must also ensure that a case is brought to a timely resolution. The military judge has sole discretion to grant or deny a delay after a case is referred for trial. *See* R.C.M. 707(c)(1) Discussion. The military judge should consider the nature and duration of any pretrial restraint in deciding to grant delay. Under R.C.M. 305(j)(1), a military judge may, upon motion, review the propriety of pretrial confinement and order a release if he or she is presented with additional information that confinement is no longer needed. In *Richards v. Deuterman*, the Navy-Marine Corps Court of Military Review held that the military judge has the same duty to independently determine the propriety of lesser forms of restraint. *Richards v.*

*Deuterman*, 13 M.J. 990, (N.M.C.M.R. 1982). We agree. Appellant remained in pretrial restriction for over four months from the time a military judge was detailed until the case was tried. Over two months elapsed while Appellant awaited examination under R.C.M. 706. Although the military judge excluded this delay, it would be advisable at some point for the government to make alternate arrangements for an examination or for the military judge to review the continuing need for pretrial restraint if further delay is unavoidable.

As discussed above, Appellant suffered a head injury while on active duty that caused significant continuing medical problems. During his sentencing case, trial defense counsel introduced portions of Veterans' Administration regulations that indicate a punitive discharge will make Appellant ineligible for continued medical care. Although we believe, on the basis of the entire record, that the sentence including the bad-conduct discharge should be approved, I also believe that this case deserves careful consideration by the Coast Guard Clemency Board and may be an appropriate case for the exercise of clemency.

### Decision

We have reviewed the record in accordance with Article 66, UCMJ. Upon such review, the findings and sentence are determined to be correct in law and fact and, on the basis of the entire record, should be approved. Accordingly, the findings of guilty and the sentence as approved below are affirmed.

McCLELLAND, Judge concurs:

I concur with the principal opinion, except that I believe every case, not just this one, deserves careful consideration by the Coast Guard Clemency Board and I decline to associate myself with the statement that this may be an appropriate case for the exercise of clemency.

BAUM, Chief Judge concurs in part and dissents in part:

I concur with the rejection of Appellant's assigned errors. The record does not establish that Appellant's restriction was tantamount to confinement or that it constituted unlawful

punishment in violation of Article 13, UCMJ.  I dissent from the action on the sentence, however.  In determining what sentence should be approved, two things bearing on sentence are of particular concern to me, the length of pretrial restriction and the effect on Appellant of his head injury.

Judge Cahill notes that Appellant remained in pretrial restriction for over four months from the time a military judge was detailed until the case was tried, during which time he repeatedly requested speedy trial.  When we add to that restriction approximately three months of combined restriction and confinement before a defense counsel and judge were assigned, we have over seven months of pretrial restraint.  I agree with Judge Cahill that it may be appropriate at some point for the military judge to order release after reviewing the continuing need for pretrial restraint, if further delay is unavoidable.  Although the judge in this case did not do that, possibly because the defense counsel affirmatively announced that he was not challenging the validity of Appellant's restriction, the military judge did expressly state that he would take the pretrial restriction into consideration when adjudging a sentence.  I, too, have taken that lengthy restraint into consideration in determining the sentence that I would approve.  All confinement has already been served, and standing alone, the restriction does not, in my view, warrant disapproval of the punitive discharge.  When considered in conjunction with Appellant's head injury, however, I reach a different conclusion.

As recounted in the principal opinion, medical records admitted in evidence reveal that Appellant suffered a serious injury to his head on 19 April 2002 resulting in balance, speech, and memory problems, cognitive and emotional difficulties, and recurring headaches.  Some of these effects were continuing at the time of Appellant's offenses, particularly mood swings and severe headaches.  I have balanced the information concerning Appellant's condition, in conjunction with his prior record, against his offenses.  Appellant enlisted in the Coast Guard in 1999, and, at the time of his injury, had advanced to Petty Officer Third Class.  He also earned a good conduct medal, but disciplinary problems developed after the injury to his head, and, according to his statement to the court prior to sentencing, he "wrongfully found refuge in marijuana" after his drastic accident.  R. at 127.  Although the record does not reveal the basis for the defense's

request for a board to determine Appellant's mental responsibility and competency to stand trial, I strongly suspect it related to the effects from his injury. The board found Appellant mentally responsible and competent, and that determination has not been challenged. His medical condition does have a bearing on the sentence to be approved, however.

Article 66, UCMJ, allows this Court to affirm only the sentence or such part or amount of it as we find correct in law and fact and determine, on the basis of the entire record, should be approved. Following that precept, after taking into consideration Appellant's injury to his head and its continuing effects, I do not believe that a bad-conduct discharge should be approved. For that reason, I dissent from the majority's action on the sentence.



For the Court,

Roy Shannon Jr.
Clerk of the Court