# UNITED STATES COAST GUARD COURT OF CRIMINAL APPEALS
## Washington, D.C.

## UNITED STATES

v.

## Christopher E. HUPP
### Food Services Specialist Third Class (E-4), U.S. Coast Guard

## CGCMG 0235

## Docket No. 1284

## January 26, 2009

General Court-Martial convened by Commander, First Coast Guard District. Tried at Boston, Massachusetts, on 31 January and 27 February 2007.

| | |
|---|---|
| Military Judge: | CAPT Brian M. Judge, USCG |
| Trial Counsel: | LT Lisa M. LaPerle, USCGR |
| Defense Counsel: | LT James M. Toohey, JAGC, USNR |
| Appellate Defense Counsel: | LT Robert M. Pirone, USCGR |
| Appellate Government Counsel: | LCDR Patrick M. Flynn, USCG |

## BEFORE
## McCLELLAND, LODGE & McGUIRE
### Appellate Military Judges

McCLELLAND, Judge:

Appellant was tried by general court-martial, military judge alone. Pursuant to his pleas of guilty, entered in accordance with a pretrial agreement, Appellant was convicted of one specification each of violating 18 U.S.C. § 2252A by receiving child pornography, and violating 18 U.S.C. § 2252A by possessing child pornography, in violation of Article 134, Uniform Code of Military Justice (UCMJ); and one specification of failure to obey a lawful order, in violation of Article 92, UCMJ. The military judge sentenced Appellant to a bad-conduct discharge, confinement for thirty-two months, forfeiture of all pay and allowances, and reduction to E-1. The Convening Authority approved the sentence as adjudged, and suspended the reduction to E-1 until the date of release from confinement. The pretrial agreement had no effect on the sentence. Appellant was credited with 75 days of credit for pretrial confinement.

Before this Court, Appellant has assigned six errors:

I.       The language in the Convening Authority's action is ambiguous as it relates to the execution of the bad-conduct discharge.

II.      Appellant's bad-conduct discharge should be set aside because Appellant gave up earned time and good conduct time in order to complete a sex offender's program in reliance on discussions between agents of the Convening Authority and Appellant's trial defense counsel where the Convening Authority represented that he would remit the bad-conduct discharge if Appellant stayed in confinement long enough to complete sex offender training.

III.     The record of trial is not verbatim and the missing portions are substantial omissions creating a rebuttable presumption of prejudice.

IV.     Appellant's pretrial restriction was tantamount to confinement and was illegal pretrial punishment in violation of Article 13, UCMJ, and R.C.M. 304(f).

V.      The military judge abused his discretion by denying Appellant's request for an independent and confidential expert witness to assist the defense.

VI.     Appellant's pleas are improvident because the military judge failed to inquire into contradictory statements made by Appellant that raised valid defenses.

We summarily reject the first issue.[1]  We also reject the fifth issue, which was waived by Appellant's guilty plea, Rule for Courts-Martial (R.C.M.), 910(j), Manual for Courts-Martial, United States (2005 ed.); and the sixth issue, as we find no substantial basis in law or fact for questioning the guilty plea, s*ee United States v. Prater*, 32 M.J. 433, 436 (C.M.A. 1991).  We discuss the other issues, and affirm.

### Proposed Post-Trial Deal Involving Bad-Conduct Discharge

Appellant claims that the government proposed to "force" him into sex offender treatment by "dismissing" the bad-conduct discharge "in exchange for more confinement time." (Assignment of Errors & Brief, App. A, Appellant's affidavit at ¶ 4.)  An email he filed in support of his argument, sent from defense counsel to trial counsel on 24 March 2007, and defense counsel's affidavit, dated 19 December 2007, indicate that the Government originally

---

[1] The action reads in pertinent part, "The sentence is approved and, except for the reduction in rate and the bad conduct discharge, ordered executed.  The reduction in rate is suspended until the date of release from confinement, at which time, unless sooner vacated, it will be remitted without further action."

planned to commute the bad-conduct discharge to twelve months additional confinement to ensure that Appellant would have sufficient time to complete sex offender treatment. This idea was soon followed by defense counsel's proposal for a post-trial agreement that the Government *not* commute the bad-conduct discharge in exchange for Appellant agreeing to abate the necessary earned time and, later, good time, sufficient to complete the treatment program. (Appellant's Motion to Attach, App. B; Reply Brief, App. C, defense counsel's affidavit at ¶ 3.) Later, but before the Convening Authority acted on the record, defense counsel proposed the deal Appellant now argues we should enforce: that the Government disapprove or suspend the bad-conduct discharge in exchange for Appellant agreeing to abate earned time and good time so as to complete the program. The Government declined to enter into that deal. (Reply Brief, App. C, defense counsel's affidavit at ¶ 3 and emails dated 13 June 2007.)

From the brig documents included in Appendix A, it appears that Appellant gave up all earned time and forty-seven days of good conduct time in order to participate in the treatment program. Apparently he believed the total abatement would turn out to be less than the additional confinement time to which he would likely have been subjected if the bad-conduct discharge had been commuted to twelve months of confinement; otherwise the latter prospect would not have induced him to abate his earned time and some good conduct time. Indeed, Appellant indicates that giving up earned time and good conduct time cost him about six additional months of confinement. (Assignment of Errors & Brief, App. A, Appellant's affidavit at ¶ 5.) By contrast, even if Appellant were awarded the maximum earned time as well as good conduct time, commutation of the bad-conduct discharge to twelve months confinement would have resulted in more than eight additional months of confinement.[2]

It may be that Appellant misunderstood the actions under consideration, but the fact is that there is no evidence whatsoever to support an obligation on the part of the Convening Authority to disapprove or suspend the bad-conduct discharge. No relief is due.

---

[2] According to the Department of the Navy Corrections Manual, SECNAVINST 1641.9C dated 3 January 2006, good conduct time is awarded at the rate of five days per month of confinement, while earned time may be awarded at not more than eight days per month based on participation in activities and graded effort.

**Pretrial Restriction; Substantially Verbatim Record**

## A.  Facts

Appellant was arrested by New Jersey State Police and confined pending trial beginning 27 June 2006 on account of the matters for which he eventually pleaded guilty at his court-martial.  (Prosecution Ex. 1.)  At the Coast Guard's request, he was released to the Coast Guard and, on 28 August 2006, was restricted to the limits of Integrated Support Command (ISC) Boston.  (Appellate Ex. V, encls. 1, 3; R. at 177.)  The terms of his restriction included five musters in uniform per day, the last one at 2200 hours; no alcohol; no access to the All-Hands Club; and no visitors after 2200 hours.[3]  (Appellate Ex. V, encl. 2.)  He had access to a gym.  (R. at 21.)  On 1 November 2006, he was given another memo setting forth the terms of his restriction, to which had been added a prohibition from using any computer or accessing the internet by any means.  (Appellate Ex. V, encls. 3, 5; R. at 178.)

On 9 January 2007, Appellant was placed in pretrial confinement after it was discovered that he had violated the terms of his restriction, including using a computer and accessing the internet.  (Appellate Ex. V, encl. 9 at 3; R. at 177.)  On 18 January 2007, Appellant's hearing before an independent reviewing officer pursuant to R.C.M. 305(i)(2) resulted in his release from confinement.  (R. at 13.)  He returned to ISC Boston, where he was again restricted, with the terms of his restriction prescribed in a third memo.  (R. at 178.)  The previous terms remained in effect, and he was prohibited from using any telephone except for a telephone he could obtain from the OOD; from possessing an electronic gaming device, VCR, DVD, or the like, or a TV, although he could watch TV in a common area; and from entering anyone else's barracks room.[4]  Visits to the exchange were to be supervised.  He had to request permission to have visitors, and he was limited to a single smoking area.  (Appellate Ex. XVI.)  Beyond the memo, he was also told that he could not go onto the pier adjacent to the ISC grounds.  (R. at 179, 211.)  The military judge found that his use of the telephone was limited to thirty minutes per day to his mother and forty-five minutes per day to his attorney.  (R. at 230.)  The latter finding was based

---

[3] The prohibition on visitors after 2200 hours applied to all barracks residents.  (R. at 18-19.)

[4] In conjunction with these terms, his cellphone, Xbox, VCR-DVD unit, and TV were confiscated.  (R. at 184.)

on testimony that upon Appellant's return from pretrial confinement, the executive officer told him that his phone calls were limited to ten minutes, which was enforced that day; on a later date, a phone call with his mother was limited to thirty minutes, pursuant to direction from the security officer; and about a week before trial, a phone call with his mother was limited to thirty-five minutes and he was told to limit phone calls with his attorney to forty-five minutes, pursuant to direction from the executive officer. (R. at 180-83, 192.)

Aside from the specific terms of restriction, Appellant encountered hostility from the executive officer when he returned from pretrial confinement. In addition to informing him of the extra conditions noted above, the executive officer told Appellant in intemperate language that he was a burden to the command and that any infraction would be cause for return to confinement. (R. at 204-05; Assignment of Errors & Brief, App. A, Appellant's affidavit at ¶ 1.) Appellant was not returned to confinement.

Appellant was arraigned on 31 January 2007. (R. at 12.) Two defense motions were heard on that date: a motion for pretrial confinement credit, and a motion to compel the government to provide an expert witness. The military judge granted a total of 75 days of credit for pretrial confinement, of which three days were because the seven-day review required by R.C.M. 305(i)(2) was conducted on the tenth day, but denied the defense's request for credit for restriction tantamount to confinement from 27 August 2006 to 9 January 2007, and also ruled that the convening authority had not abused her discretion by ordering pretrial confinement. (R. at 163-64.) He deferred a ruling on the motion for the expert, and set trial for 26 February 2007. (R. at 166-67.)

The trial resumed on 27 February 2007. Before entering guilty pleas, the defense raised a new motion seeking credit for restriction tantamount to confinement from 19 January through 26 February 2007. During Appellant's testimony on this motion, the following appears in the transcript: "TRANSCRIBER'S NOTE: Recording suspended due to a software malfunction." (R. at 190.) A little later, while Appellant was still testifying, again appears: "TRANSCRIBER'S NOTE: Recording suspended." (R. at 207.) Appellant has provided an affidavit in which he asserts that in each case, there was a malfunction of recording equipment or software, and more

questions were asked before the malfunction was noticed, implying that some of the testimony was not captured.

The military judge denied the request for credit for restriction tantamount to confinement from 19 January through 26 February 2007. (R. at 230.)

## B. Verbatim Character of Record

To the extent that the authenticated record of trial shows itself to be verbatim, it is accepted as verbatim in the absence of an allegation of fraud. *United States v. Greene*, 64 M.J. 625, 627 (C.G.Ct.Crim.App. 2007) (citing *United States v. Albright*, 9 USCMA 628, 632, 26 C.M.R. 408, 412 (1958)). When there are known omissions from the record, the question is whether the omissions are substantial. Insubstantial omissions from a record of trial do not affect its characterization as a verbatim transcript, but substantial omissions give rise to a presumption of prejudice. *United States v. Lashley*, 14 M.J. 7, 8-9 (C.M.A. 1982).

Appellant's affidavit sets forth various subjects on which he says his testimony was taken after a recording malfunction occurred but before it was noticed. On certain of these subjects, the transcript, before and after the notation of the malfunction, indicates that trial counsel repeated her questions to an extent that ensures all testimony was ultimately recorded, even if not captured the first time the questions were asked. Concerning the second malfunction, when the military judge was asking questions, the subjects Appellant mentions include some that, although reflected in the transcript to a degree, may have been clarified or elaborated upon in some respects that were not captured.

This Court has extremely limited authority to find facts based on post-trial submissions. *United States v. Ginn*, 47 M.J. 236, 248 (C.A.A.F. 1997). With due regard for the limitations on our factfinding authority, and noting the absence of evidence contrary to Appellant's affidavit, we will assume for the purposes of this issue that there was, as his affidavit states, some unrecorded testimony on these subjects[5]: "Questions included Mr Kinsman's role on base and

---

[5] On 6 December 2007, Appellant filed with this Court a motion to attach Appendix B, which includes an email dated 9 November 2007 from trial counsel to appellate government counsel. The motion to attach was granted on 28 December 2007. The email states, among other things, that there was no period of the trial that was not recorded.

how he fit into ISC Boston's chain of command, especially towards restricted personnel. Also, how the chain of command from the [OODs] up to the executive officer interacted and related to me while restricted and the time and reasons leading up to me being put into pre-trial confinement. This line of questioning ended with the new restrictions placed on me when I returned from pre-trial [confinement] and the roles of the executive officer and Mr Kinsman related to this issue." (Assignment of Errors & Brief, App. A, Appellant's affidavit at ¶ 3.)

The latter subject, new restrictions imposed upon Appellant's return from pretrial confinement, is at the heart of the motion seeking confinement credit. However, the military judge reiterated this material at the end of his questions, confirming with Appellant the new terms of his restriction. (R. at 210-12, 213-14.) We are convinced that any omissions from the transcript on this subject were not substantial.

On the other subjects, Appellant had testified on direct and cross-examination. The military judge's questions that appear in the transcript largely reiterated that testimony, with some elaboration as to details. For example, Appellant identified Mr. Kinsman as the security officer on direct examination. (R. at 180.) Immediately before the second malfunction, the military judge asked Appellant what Mr. Kinsman's position was, and Appellant responded, "He is the security officer on base." The military judge inquired as to his rank, and Appellant said he was a warrant officer. (R. at 207.) It appears that such confirmation of previous testimony was what the military judge was about throughout his examination. Indeed, he stated that he "really just confirmed the facts that [he'd] already heard." (R. at 229.) In doing so, while he showed meticulous care in ensuring he understood the testimony accurately and knew the context in which the facts of the issues occurred, we believe the testimony he elicited had no substantial effect on the issue at hand. Further, the subjects Appellant identified, aside from the new restrictions, pertain to the context; they are tangential to the issues to which Appellant's testimony was directed. Neither counsel mentioned these subjects in argument on the motion, nor did the military judge mention them in his decision. The specific restrictions imposed on Appellant as part of his pretrial restriction regime, as well as his treatment by the executive

---

As this email is not sworn to or otherwise invested with indicia of reliability, we are not according it the status of evidence.

officer, Mr. Kinsman, the OODs, and others, are amply described in the record. We are convinced that any omissions from the record resulting from recording malfunctions were insubstantial, and that Appellant certainly suffered no prejudice from any such omissions.

### C. Credit for Restriction or Pretrial Punishment

On the substantive issue of whether Appellant should receive credit for restriction tantamount to confinement up to 9 January 2007, the military judge properly applied the factors set out in *United States v. King*, 58 M.J. 110 (C.A.A.F. 2003). Without mentioning those factors when he ruled on the period beginning 19 January 2007, he nevertheless gave due consideration to the increased restrictions placed on Appellant's activities. We find no error in the military judge's decisions that Appellant was not subjected to restriction tantamount to confinement.

Appellant's contention on appeal that he was subjected to illegal pretrial punishment was not raised at trial. "A trial court is in the best position to fully develop a factual record on issues surrounding pretrial restraint." *United States v. Holz*, 59 M.J. 926, 930 (C.G.Ct.Crim.App. 2004) (citing *United States v. King,* 58 M.J. 110, 114 (C.A.A.F. 2003)). "[F]ailure at trial to seek sentence relief for violations of Article 13 waives that issue on appeal absent plain error." *United States v. Inong*, 58 M.J. 460, 465 (C.A.A.F. 2003).

The test for illegal pretrial punishment is whether there was an intent to punish or stigmatize a person awaiting disciplinary action, and if not, whether the conditions were in furtherance of a legitimate, nonpunitive, government objective. *United States v. Starr*, 53 M.J. 380, 382 (C.A.A.F. 2000). There is no basis for any suspicion of illegal punishment before 9 January 2007 when Appellant was confined. As for the period after he returned from confinement, despite the hostility of the executive officer, there is no indication that any conditions imposed on Appellant were intended as punishment or stigma. To the contrary, there is an apparent legitimate government objective to each of the conditions placed upon him, in light of the offenses of which he was suspected (and later convicted) and in light of his accessing the internet in violation of his restriction. We find no plain error and no basis for relief upon this issue.

**Decision**

We have reviewed the record in accordance with Article 66, UCMJ. Upon such review, the findings and sentence are determined to be correct in law and fact and, on the basis of the entire record, should be approved. Accordingly, the findings of guilty and the sentence, as approved below, are affirmed.

Judges LODGE & McGUIRE concur.

For the Court,



Ryan M. Gray
Clerk of the Court