UNITED STATES, Appellee

v.

Phillip KING, Jr., Senior Airman
U.S. Air Force, Appellant

No. 02-0386

Crim. App. No. 34155

United States Court of Appeals for the Armed Forces

Argued November 6, 2002

Decided February 19, 2003

CRAWFORD, C.J., delivered the opinion of the Court, in which GIERKE and EFFRON, JJ., joined. BAKER, J., filed an opinion concurring in the result, in which ERDMANN, J., joined.

<u>Counsel</u>

For Appellant: Captain Kyle R. Jacobson (argued); Colonel Beverly B. Knott and Major Jeffrey A. Vires (on brief).

For Appellee: Captain C. Taylor Smith (argued); Lieutenant Colonel LeEllen Coacher and Lieutenant Colonel Lance B. Sigmon(on brief); Major Jennifer L. Rider and Captain Adam Oler.

Military Judge: W. Thomas Cumbie

<u>**THIS OPINION IS SUBJECT TO EDITORIAL CORRECTION BEFORE FINAL PUBLICATION**</u>.

Chief Judge CRAWFORD delivered the opinion of the Court.

Appellant was tried by a general court-martial composed of a military judge sitting alone at Fairchild Air Force Base, Washington. Pursuant to his pleas of guilty, Appellant was convicted of larceny (13 specifications), making a false official statement (two specifications), and failing to obey a lawful order (one specification), in violation of Articles 121, 107, and 92, Uniform Code of Military Justice [hereinafter UCMJ], 10 U.S.C. §§ 921, 907, and 892 (2002).

The military judge sentenced Appellant to a bad-conduct discharge, confinement for 29 months, forfeiture of all pay and allowances, and reduction to the lowest enlisted grade. Pursuant to the terms of a pretrial agreement, the convening authority reduced Appellant's confinement to 24 months but otherwise approved the adjudged sentence. On appeal, the Air Force Court of Criminal Appeals affirmed the findings of guilty and the sentence. Thereafter, we granted review of the following issues:

I.

WHETHER THE AIR FORCE COURT OF CRIMINAL APPEALS MISINTERPRETED THIS COURT'S DECISION IN UNITED STATES V. ROCK, 52 M.J. 154 (C.A.A.F. 1999), WHICH HELD THAT PERIODS OF BOTH ACTUAL CONFINEMENT AND RESTRICTION TANTAMOUNT TO CONFINEMENT MUST BE APPLIED AGAINST A MAXIMUM CONFINEMENT LIMITATION IN A PRETRIAL AGREEMENT.

2

II.

WHETHER APPELLANT IS ENTITLED TO MASON CREDIT FOR THE PERIOD DURING WHICH HE WAS RESTRICTED BECAUSE THE RESTRICTIONS PLACED ON HIM WERE TANTAMOUNT TO CONFINEMENT.

As to Issue II, we hold that Appellant is not entitled to Mason credit because the pretrial restrictions placed on his liberty were not tantamount to confinement.  We further hold that in the future, failure at trial to raise the issue of pretrial restriction tantamount to confinement waives that issue for purposes of appellate review in the absence of plain error.

Given our resolution of Issue II, we need not address Issue I.

### FACTUAL AND PROCEDURAL BACKGROUND

When allegations of Appellant's larcenies surfaced, his commander issued a lawful order restricting him to the base. The extent of that restriction was as follows:

> You are hereby restricted to Fairchild Air Force Base effective 3 Mar 00.  You are also restricted from all base facilities with the exception of your dormitory residence, the Warrior Dining Facility, building 2001, the Area Defense Counsel, and any facility required to assist your defense counsel with pretrial preparation.  All other locations on base you may need to visit requires permission by me or the First Sergeant.

At trial, Appellant's defense counsel made no motion for credit against confinement for that restriction -- credit which

would have been available had that restriction been tantamount to confinement.  See United States v. Mason, 19 M.J. 274 (C.M.A. 1985)(summary disposition).  However, while Appellant's case was before the Court of Criminal Appeals on mandatory review,[1] appellate defense counsel for the first time argued that Appellant was entitled to credit against confinement for the pretrial restriction.  In support of this argument, appellate defense counsel offered, and the Court of Criminal Appeals admitted, a written declaration signed by Appellant which stated:

> Building 2001 that is referenced in the letter
> restricting me was the squadron building where
> the orderly room is.  While I was restricted, I
> worked for the First Sergeant, doing whatever he
> told me to do where he told me to do it.  This
> included cleaning around Building 2001, cleaning
> at the enlisted club, cleaning at the dormitory,
> and helping move furniture at the dining facility.
> I was also instructed to maintain a mandatory
> dental appointment that had been scheduled before
> the restriction.  In addition to the restrictions
> in the letter, I had to check in twice a day at the
> orderly room, once at [7:30 a.m.] and once again
> between [3:30 and 4:30 p.m.]  Whoever was super-
> vising my work had to call the First Sergeant and
> confirm that I was present and had arrived on time.
>
> After I was restricted, I twice asked for permission
> to go elsewhere.  I once asked to go to the commis-
> sary; my First Sergeant said he would check with the
> commander and get back to me, but he never got back to
> me.  About the same time, I also asked to go to the
> gym; the First Sergeant told me that the commander
> had said no and that I should learn how to do
> calisthenics in the dorm.  I thought about asking for

---

[1] See Article 66(b), Uniform Code of Military Justice [hereinafter UCMJ], 10 U.S.C. § 866(b)(2002).

> exceptions again (including to go to the base exchange, the shoppette, and even to go get gas for my vehicle), but the earlier negative results to my requests led me to believe that no exceptions to the restriction order would be allowed.

Before addressing the merits of Appellant's argument, the Court of Criminal Appeals first considered whether the issue was waived by the fact it was not raised at trial. Although that court felt there was "considerable merit" to applying waiver, it felt "constrained" not to apply waiver because of this Court's decisions in United States v. Huffman, 40 M.J. 225 (C.M.A. 1994), and United States v. Scalarone, 54 M.J. 114 (C.A.A.F. 2000). See United States v. King, ACM 34155, slip op. at 3 (A.F.Ct.Crim.App. Jan. 15, 2002).

As to the merits, the Court of Criminal Appeals held that even if Appellant was entitled to Mason credit for the restriction (something it did not decide), he would not have benefited from it because -- in that court's view -- under United States v. Rock, 52 M.J. 154 (C.A.A.F. 1999), the credit would be applied against the confinement adjudged at the court-martial, not the confinement approved by the convening authority. King, ACM 34155, slip op. at 3. Thus, in the lower court's view, because the approved confinement was less than the adjudged confinement would be if reduced by the number of days Appellant was restricted, it did not matter that Appellant might be entitled to Mason credit.

United States v. King, No. 02-0386/AF

As set out above, the correctness of the lower court's interpretation of Rock is now before us under issue I. However, because we conclude Appellant's restriction was not tantamount to confinement, and that he was, therefore, not entitled to any Mason credit, we need not decide whether the lower court's interpretation of Rock was correct. Nonetheless, we direct the bench and bar to our recent decision in United States v. Spaustat, 57 M.J. 256, 261-62 (C.A.A.F. 2002), which, like Rock, addresses whether credits against confinement are subtracted from adjudged versus approved sentences.

## DISCUSSION

### Appellant's Case

In United States v. Allen, 17 M.J. 126 (C.M.A. 1984), this Court interpreted a Department of Defense Instruction as requiring day-for-day credit against confinement for time an accused spends in lawful pretrial confinement. In Mason, 19 M.J. at 274, this Court extended Allen credit to situations involving pretrial restriction that is "tantamount" or "equivalent" to confinement, but that do not involve actual incarceration.[2] We did this because we "recognized that the effect which restriction tantamount to confinement has upon an appellant is the practical equivalent of the effect which occurs

---

[2] Pretrial restriction that is not tantamount to confinement is permissible under Rule for Courts-Martial 304(a)(2) [hereinafter R.C.M.], and does not give rise to credit against confinement.

6

from a similar period of actual pretrial confinement." United States v. Gregory, 21 M.J. 952, 955 (A.C.M.R. 1986), aff'd, 23 M.J. 246 (C.M.A. 1986)(summary disposition).

We review de novo the ultimate legal question of whether certain pretrial restrictions are tantamount to confinement. See United States v. Guerrero, 28 M.J. 223 (C.M.A. 1989) (conducting de novo review of that question); see also United States v. Mosby, 56 M.J. 309, 310 (C.A.A.F. 2002)(de novo review of ultimate question whether accused was subject to pretrial punishment in violation of Article 13, UCMJ, 10 U.S.C. § 813)(2002)). "The determination whether the conditions of restriction are tantamount to confinement must be based on the totality of the conditions imposed." United States v. Smith, 20 M.J. 528, 530 (A.C.M.R. 1985).

We consider "the prior examples of such cases . . . and the factors gleaned from them" in determining whether pretrial restriction is tantamount to confinement. United States v. Calderon, 34 M.J. 501, 506 (A.F.C.M.R. 1991). Factors to consider include

> the nature of the restraint (physical or moral),
> the area or scope of the restraint (confined to post,
> barracks, room, etc.), the types of duties, if any,
> performed during the restraint (routine military
> duties, fatigue duties, etc.), and the degree of
> privacy enjoyed within the area of restraint. Other
> important conditions which may significantly affect
> one or more of these factors are: whether the accused
> was required to sign in periodically with some supervising
> authority; whether a charge of quarters or other authority

7

> periodically checked to ensure the accused's presence; whether the accused was required to be under armed or unarmed escort; whether and to what degree [the] accused was allowed visitation and telephone privileges; what religious, medical, recreational, educational, or other support facilities were available for the accused's use; the location of the accused's sleeping accomodations; and whether the accused was allowed to retain and use his personal property (including his civilian clothing).

Smith, 20 M.J. at 531-32, cited with approval in Guerrero, 28 M.J. at 225.

This Court addressed in Guerrero whether an accused was entitled to Mason credit for his pretrial restriction. In Guerrero, the appellant was initially restricted to the post. However, he violated that restriction and then was

> restricted to his room, the latrine, the chapel, mess hall and other places deemed to be his place of duty as long as he was escorted by a noncommissioned officer [hereinafter NCO]. During off-duty time he could go any other place necessary provided he was escorted by an NCO. He was required "to sign in" with the CQ (Charge of Quarters) every 30 minutes until normal "lights out" for the company.

28 M.J. at 224 (quoting lower court opinion). At trial, Guerrero's defense counsel "expressly declined to equate [the] appellant's restriction at any time with confinement." It was only on appeal that Guerrero "asserted for the first time. . . that his pretrial restriction was tantamount to confinement[.]" Id. On that record, "in light of the conditions of restriction" and the fact that Guerrero's "belated claim" was made only on appeal, our Court concluded that Guerrero's restriction was not tantamount to confinement. Id.

Obviously, Guerrero differs from Appellant's case because defense counsel in Guerrero stated on the record: "[W]e do not claim [the restriction] was tantamount to confinement," 28 M.J. at 22, while in Appellant's case, the record is silent. Nonetheless, in Guerrero, trial defense counsel's failure to argue the restriction was tantamount to confinement was treated by this Court as evidence that the restriction was, in fact, not the same as confinement. Moreover, by the time Appellant was court-martialed, this Court also had stated in a related area that when an accused fails to complain of the conditions of his pretrial confinement, that is "strong evidence" that the accused is "not being punished in violation of Article 13." Huffman, 40 M.J. at 227.[3]

As a result, taking into account Guerrero, Huffman, and Smith, and considering the nature of Appellant's pretrial restriction and the fact he did not argue at trial that it was tantamount to confinement, we hold that Appellant's pretrial restriction was not tantamount to confinement, and that he is not entitled to any Mason credit.

### Future Cases

The Court of Criminal Appeals felt compelled by our precedent to consider Appellant's request for Mason credit,

---

[3] An accused is entitled to additional sentence credit for violations of Article 13, UCMJ, 10 U.S.C. § 813 (2002). See R.C.M. 305(k); United States v. Suzuki, 14 M.J. 491 (C.M.A. 1983).

despite its belief there was "considerable merit" to applying waiver. However, in the future, failure at trial to seek Mason credit for pretrial restriction tantamount to confinement will constitute waiver of that issue in the absence of plain error. See United States v. Chatman, 46 M.J. 321 (C.A.A.F. 1997)(announcing new, prospective rule in post-trial "new matter" area).

The purpose of the so-called raise-or-waive rule is to promote the efficiency of the entire justice system by requiring the parties to advance their claims at trial, where the underlying facts can best be determined. As the Supreme Court stated:

> Ordinarily an appellate court does not give consideration to issues not raised below. For our procedural scheme contemplates that parties shall come to issue in the trial forum vested with authority to determine questions of fact. This is essential in order that parties may have the opportunity to offer all the evidence they believe relevant to the issues which the trial tribunal is alone competent to decide; it is equally essential in order that litigants may not be surprised on appeal by final decision there of issues which they have had no opportunity to introduce evidence. . . . Recognition of this general principal has caused this Court to say on a number of occasions that the reviewing court should pass by, without decision, questions which were not urged [below].

Hormel v. Helvering, 312 U.S. 552, 556 (1941). See also United States v. Olano, 507 U.S. 725 (1993).

Of course, we recognize that a Court of Criminal Appeals has the unique power to determine for itself, from the existing

record, what the facts of a case are.  See Art. 66(c), UCMJ, 10 U.S.C. § 866(c)(2002).  It also has the power, in certain circumstances, to conduct limited fact-finding of its own.  See United States v. Ginn, 47 M.J. 236 (C.A.A.F. 1997).  But these powers fall far short of the power the parties themselves have to develop fully the factual record at trial through compulsory process and confrontation -- tools that are not available in a Court of Criminal Appeals.  Thus, the reasons for applying waiver in the military justice system are just as compelling as those in the civilian system.

This Court already has applied waiver to the issue of sentence credit flowing from restriction tantamount to confinement.  In United States v. Chapa, 57 M.J. 140 (C.A.A.F. 2002), the appellant was subjected to pretrial restrictions for approximately 140 days.  At trial, he argued only that he was subjected to pretrial punishment in violation of Article 13. Nonetheless, the military judge ruled the restriction was tantamount to confinement and awarded the appellant 136 days of credit against confinement.  However, "[t]he military judge did not mention R.C.M. 305; nor did she mention . . . Mason . . . or Gregory[.]"  57 M.J. at 141.

Before this Court, Chapa argued he was entitled to additional day-for-day credit, asserting that his commander had

not complied with the requirements of R.C.M. 305.[4]  We refused to consider his argument, however, and instead ruled that because "[h]e did not assert [at trial] that his restriction was tantamount to confinement, [and] did not assert a violation of the requirements for review of pretrial restraint under R.C.M. 305, . . . any issue founded on noncompliance with R.C.M. 305 was waived."  Id. at 141, 143.

Consequently, for all the reasons in support of waiver, we now hold that once this opinion becomes final, failure at trial to seek Mason credit for conditions of restriction alleged to be tantamount to confinement waives that issue on appeal in the absence of plain error.[5]  See United States v. Ecoffey, 23 M.J. 629, 631 (A.C.M.R. 1986)(failure to raise Mason issue at trial waives it on appeal); United States v. Newberry, 35 M.J. 777, 780 n.2 (A.C.M.R. 1992)(same); R.C.M. 905(e)(raise-or-waive rule).

## CONCLUSION

The decision of the United States Air Force Court of Criminal Appeals is affirmed.

---

[4] R.C.M. 305 imposes on a commander certain requirements when the commander places an accused in actual pretrial confinement.  Failure to comply with these requirements results in credit against post-trial confinement under R.C.M. 305(k).  The same is true for restriction tantamount to confinement. United States v. Gregory, 21 M.J. 952, 955 (A.C.M.R. 1986), aff'd, 23 M.J. 246 (C.M.A. 1986)(summary disposition).

[5] The case before us does not present the issue of whether waiver is applicable when credit for illegal pretrial punishment is not requested at trial.

United States v. King, No. 02-0386/AF

BAKER, Judge, with whom ERDMANN, Judge, joins (concurring in result):

I agree with the majority's conclusion that Appellant was not due credit pursuant to United States v. Mason, 19 M.J. 274 (C.M.A. 1985), and therefore concur in the result. Even if the Court of Criminal Appeals found as fact all that was in Appellant's affidavit, Appellant's restriction was not tantamount to confinement. Among other things, Appellant was able to leave the base on at least one occasion without notice and without restriction. Perhaps for this reason, Appellant's counsel did not raise the issue of Mason credit at trial.

I write separately for two reasons. First, in concluding that "even if the [A]ppellant were entitled to credit for the 25 days he served under restriction, such credit would be applied against his adjudged sentence rather than the approved sentence under the [pretrial agreement]," the Air Force Court of Criminal Appeals misread United States v. Rock, 52 M.J. 154 (C.A.A.F. 1999), and reached a conclusion contrary to this Court's decision in United States v. Spaustat, 57 M.J. 256 (C.A.A.F. 2002), decided after the lower court's decision in this case. As the law is clear in this area, we should be equally clear when the lower court misstates the law. Second, this

Court's new rule of waiver would seem to relieve military judges of responsibility to give credit where credit is due.

The number of petitions and cases this Court hears involving post-trial claims of credit can be read to suggest that the Huffman construct of affirmative waiver is unworkable as a general rule, or at least an impractical source of unnecessary litigation. However, it may also suggest that the concepts of credit and credit calculation are not as well understood in the field as we might expect. First tour counsel may not always distinguish between the variety of credits due under Mason, United States v. Suzuki, 14 M.J. 491 (C.M.A. 1983), and United States v. Allen, 17 M.J. 126 (C.M.A. 1984), with the same ease as appellate courts.

The Court of Criminal Appeals itself, misread Rock, and misconstrued the manner of credit calculation. In Rock, 52 M.J. at 157, this Court said

> Where there is a pretrial agreement that sets out a lesser limitation than that adjudged by the court-martial, however, a different result obtains. Where the agreement establishes a maximum confinement, for example, that is less than that adjudged by the court-martial, that lesser limit becomes the maximum total confinement that the accused lawfully can be made to serve. Where portions of that confinement have already been served, actually or constructively, the credit applies against the agreement, otherwise the accused's sentence will exceed the maximum lawful limit.

2

In <u>Spaustat</u>, this Court reiterated the point as applied to Article 13, Uniform Code of Military Justice, 10 U.S.C. § 813 (2002), and Rule for Courts-Martial 305 [hereinafter R.C.M.] credit:

> Furthermore, we recognize that applying confinement credit against the adjudged sentence in cases where there is a pretrial agreement can produce anomalous results, and it can deprive an appellant of meaningful relief for egregious violations of Article 13 or RCM 305.... Accordingly, in order to avoid further confusion and to ensure meaningful relief in all future cases after the date of this decision, this Court will require the convening authority to direct application of all confinement credits for violations of Article 13 or RCM 305 and all <u>Allen</u> credit against the approved sentence; i.e., the lesser of the adjudged sentence or the sentence that may be approved under the pretrial agreement.

<u>Spaustat</u>, 57 M.J. at 263-64.

Nonetheless, the lower court concluded: "Even if appellant were entitled to credit for the 25 days he served under restriction, such credit would be applied against his adjudged sentence rather than the approved sentence under the [pretrial agreement]." (As a result, the Court of Criminal Appeals did not reach a factual conclusion regarding Appellant's restriction.)

Against this backdrop, I agree with the majority that issues of <u>Mason</u> credit are better litigated at the trial level. In support of this position, the majority concludes that the parties have far more power than do courts of appeal to discover facts. Whether or not this is accurate

3

United States v. King, No. 02-0386/AF

as a comparative matter, or in general, see e.g., United
States v. Campbell, 57 M.J. 134 (C.A.A.F. 2002)(Court of
Criminal Appeals has discretion to determine how additional
evidence will be obtained), the parties certainly have
within their reach adequate means of discovery to fully
litigate questions of credit at trial.  To this end, the
majority announces a prospective rule of waiver: "[F]ailure
at trial to raise the issue of pretrial restriction
tantamount to confinement waives that issue for purposes of
appellate review in the absence of plain error."[*]  _ M.J.
(3).

I would not be so quick to relieve military judges of
their responsibility for providing credit where credit is
due.  R.C.M 905(e) does not make military judges
spectators, devoid of responsibility for ensuring the fair
and just administration of justice.  If indeed an appellant
has been denied a liberty interest, which amounts to
confinement, he should have his claim to credit adjudicated

---

[*] If this is a new rule, it is not clear what rule it replaces.  If the
rule is intended to overturn the reasoning in United States v.
Scalerone, 54 M.J. 114, 117 n.1 (C.A.A.F. 2000) then the court should
do so expressly.  Alternatively, this Court should indicate why Article
13, Uniform Code of Military Juctice, 10 U.S.C.§ 113 (2002), claims are
distinct from claims pursuant to United States v. Mason, 19 M.J. 274
(C.M.A. 1985), in a manner warranting a separate application of waiver.
Nor is it clear whether there is a difference between plain error and
error in cases involving valid claims of credit.  Absent such
discussion and distinction, the clarity the new rule is intended to
offer may be diluted in the field.

4

by competent judicial authority.

   If the Court is concerned about unnecessary appellate credit litigation, we should ensure that military judges -- experienced in the law and its application -- ask on the record whether an accused seeks any credit.  If the trial judge does so and the accused is silent, or responds in the negative, then surely the matter of credit is waived.  That is a workable and simple solution that will prevent undue litigation under either a preserved or plain error rubric.

   But that is not this case.  Appellant did not receive restriction tantamount to confinement.  Therefore, it is not surprising that counsel did not pursue a credit claim at trial.