# UNITED STATES NAVY-MARINE CORPS
# COURT OF CRIMINAL APPEALS
# WASHINGTON, D.C.

**Before**
**F.D. MITCHELL, J.A. FISCHER, M.K. JAMISON**
Appellate Military Judges

**UNITED STATES OF AMERICA**

v.

**BRUNO J. RUSSELL**
**CORPORAL (E-4), U.S. MARINE CORPS**

**NMCCA 201300208**
**GENERAL COURT-MARTIAL**

**Sentence Adjudged:** 11 January 2013.
**Military Judge:** CDR John A. Maksym, JAGC, USN.
**Convening Authority:** Commanding General, 3d Marine Logistics Group, Okinawa, Japan.
**Staff Judge Advocate's Recommendation:** LtCol P.D. Sanchez, USMC.
**For Appellant:** LT Jennifer L. Myers, JAGC, USN.
**For Appellee:** Capt Matthew M. Harris, USMC.

**31 March 2014**

---------------------------------------------------
## OPINION OF THE COURT
---------------------------------------------------

**THIS OPINION DOES NOT SERVE AS BINDING PRECEDENT, BUT MAY BE CITED AS PERSUASIVE AUTHORITY UNDER NMCCA RULE OF PRACTICE AND PROCEDURE 18.2.**

PER CURIAM:

A general court-martial composed of officer and enlisted members convicted the appellant, contrary to his pleas, of rape and aggravated sexual contact in violation of Article 120, Uniform Code of Military Justice, 10 U.S.C. § 920 (2006). The members sentenced the appellant to four years' confinement, total forfeitures, reduction to pay grade E-1, and a bad-conduct discharge. The convening authority (CA) approved the sentence as adjudged.

In summary, the appellant raises the following five assignments of error (AOEs): (1) that the appellant was denied a speedy trial; (2) that the appellant is entitled to credit against his sentence for being placed on restriction tantamount to confinement; (3) that the military judge was not impartial; (4) that the court-martial was not properly convened; and, (5) that the Commandant of the Marine Corps exerted unlawful command influence on the court-martial through a series of lectures known as the "Heritage Brief."[1]

We granted the appellant's Consent Motion to Attach Documents, which consisted of his unsworn declaration under penalty of perjury outlining the conditions placed on his liberty following the allegations in this case. Additionally, we granted the Government's Motion to Attach Documents, which consisted of ten separate orders assigning or extending the appellant to the liberty risk program. We have examined the record of trial, the appellant's assignments of error, his declaration, the liberty risk orders and the pleadings from the parties. We conclude that the findings and the sentence are correct in law and fact and that no error materially prejudicial to the substantial rights of the appellant was committed. Arts. 59(a) and 66(c), UCMJ.

**Background**

On 26 June 2011, the appellant, Sergeant (Sgt) S,[2] and two other Marines watched movies and drank alcohol in a barracks room on Camp Foster in Okinawa, Japan. After consuming several drinks and feeling the effects of the alcohol, Sgt S returned to her barracks room to sleep. The appellant followed Sgt S to her room, entered the room behind her, and then sexually assaulted and raped her. Several Marines, residing in the barracks, responded to screams from Sgt S's room. They entered the room and found Sgt S sitting on her bed wrapped in a towel and crying. They also found the appellant hiding under the empty bed in the room. Military police were called and apprehended the appellant shortly thereafter.

On the day following his apprehension, the appellant's command placed him on Class "C" Liberty Risk. In this status, the appellant's off-base liberty was secured. His base liberty expired daily at 2200 and he was required to be in his assigned

---

[1] AOEs (3), (4) and (5) are summary AOEs raised pursuant to *United States v. Grostefon*, 12 M.J. 431 (C.M.A. 1992).

[2] Sgt S was a corporal at the time of the offenses.

barracks room from 2200 to 0530.  He was required to remain in the uniform of the day while on base liberty and in the barracks area, except during physical training (PT) when he was required to wear unit PT gear.  Additionally, the appellant was not permitted to purchase or consume alcohol.  The stated purpose for the appellant's liberty risk status was the protection of foreign relations between the United States and Japan.  The appellant remained on some form of liberty risk until his trial in January 2013.

During the presentencing proceedings, the Government counsel stated there had been no pretrial restraint or confinement of any kind.  Record at 959.  When asked by the military judge if he concurred, the trial defense counsel stated, "[c]oncur, sir.  There has been liberty class charlie, which we'll be arguing in argument, but not contending that it was any sort of pretrial restriction or restraint." *Id.*  During an unsworn statement, the appellant indicated he was on Class "C" Liberty Risk for the time period following the incident until the date of trial, with the exception of one month when he was on Class "B" Liberty Risk.[3]  *Id.* at 989.  During his sentencing argument, the trial defense counsel stated "He's been on liberty risk for the past year and a half.  He has already been cut down somewhat.  But he's showing, you know what, he still has some freedoms, and he hasn't gotten in any trouble. He hasn't done anything like that."  *Id.* at 1002.

**Discussion**

**Restriction Tantamount to Confinement**

We begin our analysis with the appellant's second AOE.  On appeal, the appellant contends for the first time that post-incident conditions imposed on his liberty constituted pretrial restriction tantamount to confinement and thus he is entitled to credit against his adjudged confinement.  As support for his position, in his unsworn post-trial declaration the appellant states *inter alia*: (1) that he was moved from his barracks room to a room by the barracks duty desk for a period of between two and four months; (2) that, while staying in this new room he was only able to retrieve a portion of his belongings from his prior room, that he had to inform the duty anytime he went to his former room, and that sometimes had to be escorted; (3) that he had a nightly 2200 curfew at which he had to be in his barracks

---

[3] Under Class "B" liberty risk, the appellant was permitted off-base liberty when accompanied by a noncommissioned or higher ranked officer.  Off-base liberty secured at 2000.

3

room; (4) that he had room checks every two hours between 2200 and when he left for work each morning; and (5) that he was denied leave to return to the United States in August 2012 and denied on-base leave twice in December 2012.

In *United States v. Allen*, 17 M.J. 126, 128 (C.M.A. 1984), the Court of Military Appeals interpreted a Department of Defense Instruction as requiring day-for-day credit against confinement for time an accused spends in lawful pretrial confinement. In *United States v. Mason,* 19 M.J. 274 (C.M.A. 1985) (summary disposition), the court extended *Allen* credit to situations involving pretrial restriction that is "equivalent" to confinement, but that do not involve actual incarceration. We review *de novo* the ultimate legal question of whether pretrial restraint is tantamount to confinement. *See United States v. King*, 58 M.J. 110, 113 (C.A.A.F. 2003) (citing *United States v. Guerrero*, 28 M.J. 223 (C.M.A. 1989) (additional citation omitted). The appellant's failure at trial to seek *Mason* credit for restraint conditions alleged to be tantamount to confinement forfeits that issue on appeal in the absence of plain error. *Id.* at 115.

The trial defense counsel affirmatively stated that the appellant's liberty risk condition did not amount to pretrial restraint of any kind, much less equate to pretrial confinement. Additionally, in his sentencing argument, the trial defense counsel emphasized the appellant's law abidance despite the freedom he enjoyed while in a liberty risk status. Given the allegations of forcible rape and sexual assault against the appellant, coupled with the sensitivities between the United States and Japan over the personal conduct of military personnel at the command's forward deployed location in Okinawa, Japan,[4] the command's placement of the appellant on liberty risk was reasonable. Under these circumstances, the military judge's failure to *sua sponte* find the appellant's liberty risk status constituted pretrial restriction tantamount to confinement was not error, much less plain error. Moreover, we find that the appellant's assignment as a liberty risk was imposed for a lawful reason to avoid international incidents and that the conditions on his liberty were not so onerous as to constitute pretrial restriction tantamount to confinement. *See United States v. Bradford,* 25 M.J. 181, 186 (C.M.A. 1987) (holding that proper assignment as a liberty risk is not changed to pretrial restraint just because a court-martial is contemplated).

---

[4] During the time of the appellant's liberty risk, off-base liberty for all Marines in Okinawa secured at midnight. Appellant's Declaration of 26 Nov 2013.

**Speedy Trial**

The appellant also contends for the first time on appeal that he was denied a speedy trial under the Sixth Amendment and RULE FOR COURTS-MARTIAL 707, MANUAL FOR COURTS-MARTIAL, UNITED STATES (2012 ed.). R.C.M. 707(a) provides, in relevant part, that an accused shall be brought to trial within 120 days after the earlier of (1) the preferral of charges; or (2) the imposition of restraint under R.C.M. 304(a)(2)-(4). Conditions on liberty are defined in R.C.M. 304(a)(1) and do not trigger the R.C.M. 707 speedy trial clock. Likewise, Sixth Amendment protections extend to courts-martial and are triggered upon preferral of charges or the imposition of pretrial restraint. *See United States v. Vogan*, 35 M.J. 32, 33 (C.M.A. 1992).

The appellant asserts the speedy trial clock under the Sixth Amendment and R.C.M. 707 began when he was placed on liberty risk because the primary purpose of this restraint was to ensure his presence for court-martial. Appellant's Brief of 26 Nov 2013 at 12-13. However, as we previously stated we find the appellant's assignment of liberty risk was imposed for the protection of foreign relations and to avoid international incidents and constituted "conditions on liberty" under R.C.M. 304(a)(1). Thus, we find the speedy trial clock was not triggered under R.C.M. 707 when the appellant was placed on liberty risk. The speedy trial clock commenced when charges were preferred on 1 June 2012 and the appellant was provided a speedy trial under the Sixth Amendment and R.C.M. 707.

**Military Judge's Impartiality**

The appellant asserts that the military judge abandoned his neutral role when he interrupted the trial defense counsel as he was impeaching the victim with a prior inconsistent statement from her Article 32, UCMJ, testimony. The military judge read the members an additional portion of the victim's Article 32, UCMJ, testimony and then explained to the members that he did this to provide them the "full context" of the victim's prior statement. Record at 633. Additionally, the appellant asserts that the military judge was not neutral when he interrupted the testimony of the Government's DNA expert and advised her to speak in layman's terms because she was "losing" some of the members. *Id.* at 782.

"'When a military judge's impartiality is challenged on appeal, the test is whether, taken as a whole in the context of [the] trial, [the] court-martial's legality, fairness, and

5

impartiality were put into doubt' by the military judge's actions." *United States v. Quintanilla,* 56 M.J. 37, 78 (C.A.A.F. 2001) (quoting *United States v. Burton*, 52 M.J. 223, 226 (C.A.A.F. 2000)).  While a military judge must maintain his "fulcrum position of impartiality," he can and sometimes must ask questions in order to clear up uncertainties in the evidence or to develop the facts further.  *United States v. Ramos*, 42 M.J. 392, 396 (C.A.A.F. 1995) (citations omitted).  We apply this test from the viewpoint of the reasonable person observing the proceedings. *Id.*

Examining the two instances, we find that the military judge acted to assist the members by providing them a fuller picture of the victim's prior statement and to prevent confusion that can result from expert testimony.  Nothing in these actions by the military judge causes us to believe that a reasonable person would question the legality, fairness, or impartiality of the court-martial.  We conclude that the military judge did not act as a partisan advocate, and we decline to grant relief.

## Unlawful Command Influence

The appellant also, in a summary AOE, avers that the Commandant of the Marine Corps exerted unlawful command influence (UCI) on the members through a series of lectures known as the "Heritage Brief."  We review allegations of UCI *de novo. United States v. Villareal*, 52 M.J. 27, 30 (C.A.A.F. 1999).  Article 37(a), UCMJ, states, "No person subject to this chapter may attempt to coerce or, by any unauthorized means, influence . . . the action of any convening, approving, or reviewing authority with respect to his judicial acts."  The appellant has the initial burden of producing sufficient evidence to raise unlawful command influence.  *United States v. Stombaugh*, 40 M.J. 208, 213 (C.M.A. 1994).  This threshold is low, but it must be more than "a bare allegation or mere speculation."  *United States v. Johnston*, 39 M.J. 242, 244 (C.M.A. 1994) (citation omitted).

The defense did not raise UCI as an issue at the trial level; however, the Heritage Brief was discussed during *voir dire*.  In general *voir* dire, all but two of the members indicated they attended the Heritage Brief.  Record at 146.  During individual *voir dire* none of the members indicated that attending the Heritage Brief would impact their decisions in the court-martial or that they felt any pressure from the Commandant or the CA for any particular outcome in the appellant's case. *Id.* at 160-376.  In an Article 39(a), UCMJ, session the military

6

judge *sua sponte* addressed the Heritage Brief and unspecified statements made by the Secretary of the Navy and the Chief of Naval Operations. *Id.* at 234-36. He found no actual UCI had taken place, but concluded there was an appearance of UCI "by virtue of the very things these individuals have said." *Id.* at 236. In order to alleviate the appearance of UCI, the military judge granted the defense four peremptory challenges. *Id.* The trial defense counsel raised no objection to the military judge's approach and declined further comment on the issue despite the military judge's invitation. *Id.*

The record before us is devoid of facts that, if true, constitute UCI. Moreover, we find no indication whatsoever that the proceedings were unfair. *Stombaugh*, 40 M.J. at 213. The appellant has failed to meet his initial burden of production, and therefore we decline to grant relief.

## Remaining Assignment of Error

With regard to the appellant's remaining summary AOE, after careful review of the record and pleadings, we find it to be without merit. *United States v. Clifton*, 35 M.J. 79, 81-82 (C.M.A. 1992).

## Conclusion

The findings and the sentence as approved by the CA are affirmed.

For the Court

R.H. TROIDL
Clerk of Court

7