*This opinion is subject to administrative correction before final disposition.*

# United States Navy–Marine Corps Court of Criminal Appeals

Before
GASTON, ATTANASIO, and HOUTZ
Appellate Military Judges

_____

**UNITED STATES**
*Appellee*

**v.**

**Logan A. YARBERRY**
Lance Corporal (E-3), U.S. Marine Corps
*Appellant*

**No. 202100117**

Decided: 25 July 2022

Appeal from the United States Navy-Marine Corps Trial Judiciary

Military Judge:
Kevin S. Woodard

Sentence adjudged 5 March 2021 by a special court-martial convened at Marine Corps Base Camp Lejeune, North Carolina, consisting of a military judge sitting alone. Sentence in the Entry of Judgment: reduction to E-1, confinement for 12 months, and a bad-conduct discharge.

For Appellant:
*Captain Thomas P. Belsky, JAGC, USN*

For Appellee:
*Captain Tyler W. Blair, USMC*
*Lieutenant Gregory A. Rustico, JAGC, USN*

Judge ATTANASIO delivered the opinion of the Court, in which Senior Judge GASTON and Judge HOUTZ joined.

_____

**This opinion does not serve as binding precedent under
NMCCA Rule of Appellate Procedure 30.2(a).**

_____

ATTANASIO, Judge:

Appellant was convicted, in accordance with his pleas, of violation of a lawful general order and wrongful use and possession of controlled substances in violation of Articles 92 and 112a, Uniform Code of Military Justice,[1] for using lysergic acid diethylamide and possessing drug paraphernalia, marijuana, lysergic acid amide, and a naturally occurring intoxicating substance (5-Methoxy-N-N-dimethyltryptamine) with the intent to induce intoxication, excitation, or stupefaction.

Appellant asserts in his sole assignment of error that his trial defense counsel were ineffective for failing to seek credit for the 77 days he spent in pretrial restriction under conditions tantamount to confinement, and for negotiating a plea agreement that waived his right to litigate this issue. We find no prejudicial error and affirm.

## I. BACKGROUND

After serving a week in pretrial confinement, Appellant spent 77 days in pretrial restriction until the day of his guilty pleas and sentencing. His two trial defense counsel [TDC], Captains Papa and Bravo, USMC,[2] assisted him in negotiating a plea agreement to plead guilty to the charges and specifications (excepting certain language) in exchange for a sentence at a special court-martial that included reduction to E-1, confinement for 12 months, and a bad-conduct discharge. As part of the plea agreement, Appellant also agreed to waive all waivable motions.

_____

[1] 10 U.S.C. §§ 892, 912a.

[2] All names in this opinion, other than those of Appellant, the judges, and appellate counsel, are pseudonyms. Captain Papa was a first lieutenant at the time of trial, but was subsequently promoted.

The record of trial reveals no suggestion that Appellant felt aggrieved by the conditions of his pretrial restriction. He sought no credit pursuant to *United States v. Mason*[3] based on any claim that his time in pretrial restriction was tantamount to confinement. He did not raise the issue as an objection, as a motion for appropriate relief, or as a matter in extenuation or mitigation during his sentencing case. He agreed with his TDC's statement to the military judge that he had not been illegally punished prior to trial. And he made no mention of his pretrial restriction in his subsequent clemency submission to the convening authority.

During the trial, Appellant informed the military judge that he understood all provisions of the plea agreement. He stated he had had enough time to discuss his case with TDC, had "fully consulted with [TDC] and received the full benefit of their advice," and was satisfied that TDC's advice had been in his best interest.[4]

On appeal, Appellant asserts for the first time that the conditions of his pretrial restriction were tantamount to confinement and that his TDC were ineffective for not seeking *Mason* credit for those days and for agreeing to the plea agreement's provision waiving all waivable motions, which gave up his right to challenge the conditions of his restriction.

## II. DISCUSSION

We review claims of ineffective assistance of counsel de novo.[5] "In order to prevail on a claim of ineffective assistance of counsel, an appellant must demonstrate both (1) that his counsel's performance was deficient, and (2) that this deficiency resulted in prejudice."[6] We "must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance."[7] "[W]hen a claim of ineffective assistance of counsel is premised

---

[3] *United States v. Mason*, 19 M.J. 274 (C.M.A. 1985) (summary disposition) (granting day-for-day confinement credit for time spent in pretrial restriction under conditions tantamount to confinement).

[4] R. at 99.

[5] *United States v. Mazza*, 67 M.J. 470, 474 (C.A.A.F. 2009).

[6] *United States v. Green*, 68 M.J. 360, 361-62 (C.A.A.F. 2010) (citing *Strickland v. Washington*, 466 U.S. 668 (1984)).

[7] *Strickland*, 466 U.S. at 689.

on counsel's failure to make a motion . . . an appellant must show that there is a reasonable probability that such a motion would have been meritorious."[8] In this regard, the term "meritorious" is synonymous with "successful."[9] "[T]he decisional issue is whether [the a]ppellant has carried his burden to show that his counsel would have been successful if he filed a timely motion."[10]

In order to determine whether there is a reasonable probability that a motion seeking *Mason* credit would have been successful, we must consider the underlying issue of whether the conditions of Appellant's pretrial restriction were tantamount to confinement. "We review *de novo* [this] ultimate legal question of whether certain pretrial restrictions are tantamount to confinement."[11] In determining this issue, we consider the totality of the conditions imposed, including "prior examples of such cases . . . and the factors gleaned from them[.]"[12] These factors include:

> the nature of the restraint (physical or moral), the area or scope of the restraint (confined to post, barracks, room, etc.), the types of duties, if any, performed during the restraint (routine military duties, fatigue duties, etc.), and the degree of privacy enjoyed within the area of restraint. Other important conditions which may significantly affect one or more of these factors are: whether the accused was required to sign in periodically with some supervising authority; whether a charge of quarters or other authority periodically checked to ensure the accused's presence; whether the accused was required to be under armed or unarmed escort; whether and to what degree [the] accused was allowed visitation and telephone privileges; what religious, medical, recreational, educational, or other support facilities were available for the accused's use; the location of the accused's sleeping accommodations; and whether the accused was allowed

---

[8] *United States v. Jameson*, 65 M.J. 160, 163-64 (C.A.A.F. 2007) (quoting *United States v. McConnell*, 55 M.J. 479, 482 (C.A.A.F 2001) (motion to suppress evidence)).

[9] *Id.* at 164.

[10] *Id.*

[11] *United States v. King*, 58 M.J. 110, 113 (C.A.A.F. 2003) (citations omitted).

[12] *Id.* (citation and internal quotation marks omitted).

to retain and use his personal property (including his civilian clothing).[13]

In general, analysis of the foregoing factors will reveal "levels of restraint . . . which fall somewhere on a spectrum that ranges from 'restriction' to 'confinement.' If the level of restraint falls so close to the 'confinement' end of the spectrum as to be tantamount thereto, [an] appellant is entitled to appropriate and meaningful administrative credit against his sentence."[14]

Appellant alleges his TDC neither asked him about nor investigated the nature and conditions of his pretrial restriction, and did not explain that he had the right to raise the issue of restriction tantamount to confinement and that the provision in the plea agreement term waiving all waivable motions barred him from raising the issue at trial or on appeal. He alleges that he only appreciated the issues concerning the conditions of his restriction after he reported to the brig to serve his adjudged sentence; that he only agreed to waive all waivable motions in the plea agreement because he did not know about the potential issue of illegal pretrial restriction; and that if he had known he had a motion for illegal pretrial restriction he would not have agreed to this term.

As to the conditions of his pretrial restriction, Appellant alleges he was limited primarily to a barracks room, could not leave the barracks building without permission or an escort, and could not leave the base. He states that he needed permission to have visitors, but was told no visitor requests would be approved, which prevented him from seeing his fiancée. He states that because he lived off base when his pretrial restraint began, he lacked a meal card and therefore did not use the mess hall for meals during his restriction and had to arrange for fellow Marines to bring meals to him in the barracks. He states that he was not allowed to receive deliveries and therefore did not have any of his civilian clothes or personal belongings during his time on restriction. He states that the conditions of his pretrial restriction also undercut medical guidance concerning his service-connected leg injury—advising him not to stand or walk for more than ten minutes per hour or carry more than five pounds—since he was unable to receive rides while on restriction and therefore had to walk 30 minutes or more to meet with his attorney or report for duty and had to walk to a separate building every two to three hours for "restriction check-in."

---

[13] *Id.* (citations omitted).

[14] *United States v. Smith*, 20 M.J. 528, 531 (A.C.M.R. 1985).

After reviewing Appellant's filings, consistent with our superior court's precedent,[15] we ordered responsive affidavits from his TDC, both of whom categorically deny Appellant's account of events. They state that they spoke with Appellant about the nature of his pretrial restriction and explained the issue of illegal pretrial restriction along with options to seek confinement credit, and that Appellant wanted to attain the principal benefit of the plea agreement—referral to a special court-martial—rather than seek confinement credit at a contested court-martial. They also state that Appellant did not have an escort when visiting the TDC's offices or meeting with them outside his barracks building; was allowed to accept car rides, often drove with friends to his legal appointments, and never walked to the TDC's offices; was free to eat in the mess hall or to get takeout food, which he often did; was not prohibited from seeing his fiancée, whose only impediment to seeing him was that she lacked base access; and was allowed throughout his pretrial restriction to keep his cellphone, which he used to speak daily with his fiancée.

Since an appellant bears the "burden of establishing the truth of factual matters relevant to the claim,"[16] we must determine whether a post-trial evidentiary hearing is required to resolve the contradictions between Appellant's declaration and the TDC's affidavits. In *United States v. Ginn*, our superior court held that "a post-trial evidentiary hearing . . . is not required in any case simply because an affidavit is submitted by an appellant. In most instances in which an appellant files an affidavit in the Court of Criminal Appeals making a claim such as ineffective assistance of counsel at trial, the authority of the Court to decide that legal issue without further proceedings should be clear."[17] The court set forth six principles to guide this determination:

> First, if the facts alleged in the affidavit allege an error that would not result in relief even if any factual dispute were resolved in appellant's favor, the claim may be rejected on that basis.

> Second, if the affidavit does not set forth specific facts but consists instead of speculative or conclusory observations, the claim may be rejected on that basis.

---

[15] *See United States v. Lewis*, 42 M.J. 1, 5-6 (C.A.A.F. 1995); *United States v. Melson*, 66 M.J. 346 (C.A.A.F. 2008).

[16] *Denedo v. United States*, 66 M.J. 114, 128 (C.A.A.F. 2008), *aff'd*, 556 U.S. 904, (2009).

[17] *United States v. Ginn*, 47 M.J. 236, 248 (C.A.A.F. 1997).

Third, if the affidavit is factually adequate on its face to state a claim of legal error and the Government either does not contest the relevant facts or offers an affidavit that expressly agrees with those facts, the court can proceed to decide the legal issue on the basis of those uncontroverted facts.

Fourth, if the affidavit is factually adequate on its face but the appellate filings and the record as a whole "compellingly demonstrate" the improbability of those facts, the Court may discount those factual assertions and decide the legal issue.

Fifth, when an appellate claim of ineffective representation contradicts a matter that is within the record of a guilty plea, an appellate court may decide the issue on the basis of the appellate file and record (including the admissions made in the plea inquiry at trial and appellant's expression of satisfaction with counsel at trial) unless the appellant sets forth facts that would rationally explain why he would have made such statements at trial but not upon appeal.

Sixth, the Court of Criminal Appeals is required to order a factfinding hearing only when the above-stated circumstances are not met. In such circumstances the court must remand the case to the trial level for a *DuBay* proceeding. During appellate review of the *DuBay* proceeding, the court may exercise its Article 66 factfinding power and decide the legal issue.[18]

Based on the first, second, fourth, and fifth factors, we see no need to order further fact-finding proceedings.[19] Appellant's factual assertions regarding the conditions of his pretrial restriction fall into two broad categories: (1) those that we reject as "speculative and conclusory observations" or because the record as a whole contradicts them or compellingly demonstrates their improbability, and (2) those that, even if true, fail to show a reasonable probability that

---

[18] *Id.*

[19] We remain mindful that we are not authorized "to decide disputed questions of fact pertaining to post-trial claims of ineffective assistance of counsel, solely or in part on the basis of conflicting affidavits submitted by the parties." *Id.* at 243. While we provided as background a summary of TDC's affidavits, we do not rely on the information contained therein, and decide the issue presented based solely on the record of trial and the information in Appellant's declaration, consistent with the principles enunciated in *Ginn, supra.*

a motion for *Mason* credit would have been successful. We discuss each of these two categories in turn.

### 1. Factual assertions we reject

#### a. Visitors

Appellant alleges that he "was told that no visitor requests would be approved," but provides little detail and no answer to important questions. Who told him? His commanding officer? The barracks non-commissioned officer [NCO]? Another restricted Marine? Was he told orally or in writing, formally or informally? Did he actually submit a visitor request that was denied? Appellant bears the burden to establish necessary facts, and because we will not guess at the answers to these obvious questions, we reject this factual assertion as speculative and conclusory.

#### b. Civilian Belongings

Appellant complains that he did not have any of his civilian clothes or personal belongings during his time on restriction because he was not authorized deliveries at the restriction barracks. An off-base resident, Appellant was ordered into pretrial restraint while on base, so it makes sense that he did not have any civilian property when restraint began. However, there is no requirement for a command to delay imposition of lawful pretrial restraint to afford an accused time to visit his off-base residence to collect personal belongings, and there are various good and cogent reasons to prohibit a pretrial restrictee from leaving base. The pertinent questions, then, are: (1) Did Appellant request permission to visit his off-base residence to retrieve any of his personal belongings (perhaps with an escort)? (2) If so, did the command grant or deny the request? (3) If the command denied the request, did the command do so reasonably? Appellant does not address, much less answer, any of these questions. Accordingly, here again, we reject this observation as speculative and conclusory.

#### c. Meal Card

Again owing to his off-base residence, Appellant states that he lacked a meal card and therefore did not use the mess hall for meals during restriction and had to arrange for fellow Marines to bring him meals to eat in the barracks. Once more, Appellant's cursory complaint raises more questions than it answers. Did Appellant request a meal card? If so, what, if any, action did the command take? Did Appellant even want a meal card? Because Appellant does not tell us the answers to these pertinent questions, and we will not guess, we reject this observation as speculative and conclusory.

### *d. Appellant's prohibition from accepting rides despite his leg injury*

Appellant complains that he was restricted from accepting rides, thus frequently forcing him to exceed medical guidance not to stand or walk for more than ten minutes per hour due to his leg injury.

Appellant said nothing about this issue at trial despite spending almost the entirety of his oral unsworn statement discussing his leg injury. Submitted in question and answer format with TDC's assistance, Appellant's oral statement provided a detailed account of his injury's impact on his quality of life. He described being hampered in doing things with his wife,[20] playing sports, carrying groceries, and going camping. He recounted medical guidance against his standing for more than 10 minutes per hour. However, he said nothing about this injury in the context of his pretrial restriction or any alleged command mistreatment.

Appellant also submitted a written unsworn statement. This, too, was silent regarding his pretrial restriction, although it did include a litany of grievances against his command (all unrelated to pretrial restriction). Appellant lamented his command's failure to support his medical treatment needs and recounted being subjected to grossly inappropriate comments from various NCOs concerning his injury. But these complaints all involved events that occurred prior to pretrial restriction. Appellant said nothing about being forbidden from accepting rides or being forced to walk excessively contrary to medical advice.

What is clear from Appellant' sentencing case is that TDC and Appellant agreed that Appellant's leg injury constituted significant mitigating evidence, and their strategy included blunt criticism of the command's alleged mishandling of Appellant's medical issues. Yet, despite the perfect capstone to such an argument—command indifference to Appellant's medical needs during his pretrial restriction—Appellant did not address these issues in this context in either of two unsworn statements. Nor is Appellant's silence explained by any alleged failure by TDC to inform him about or seek *Mason* credit. Notwithstanding TDC's alleged deficiency, Appellant had no problem highlighting the mitigating character of his injury-related issues as they existed *prior to pretrial restriction*, but made no mention of the purported prohibition against accepting rides *during pretrial restriction*.

---

[20] Appellant refers to his "wife" in his unsworn statement but discusses his "fiancée" in his post-trial declaration. The record does not explain this discrepancy.

*2. Factual assertions that, even if true, fail to establish a reasonable probability that a motion for* Mason *credit would have been successful.*

Appellant asserts he was limited primarily to his restriction room, could not leave his barracks building without an escort, and was prohibited outright from leaving the base. However, Appellant was not restricted to his building during duty hours. His own declaration claims that he was often required to walk 30 minutes or more to meet with his attorney or report for duty. It follows that if Appellant *often walked 30 minutes* to report for duty or attend attorney meetings, he necessarily left his building and trekked throughout the base. Appellant also visited Base Medical at least five times and managed to schedule a surgical procedure for the week after trial.[21]

Further, Appellant alleges no prohibition on his use of base religious, educational, or recreational facilities. He alleges neither withholding of his telephone privileges nor seizure of his personal cellphone. He alleges no requirement to perform fatigue or other non-routine military duties, nor does he allege the presence of any armed guards. Finally, Appellant alleges nothing unusual or inadequate about the barracks building, or his "restriction room" in it, and acknowledges there were no muster requirements between 2145 and 0600, allowing for more than eight hours of uninterrupted sleep in an ordinary military sleeping environment.

Such conditions do not sit close enough to the confinement end of the restraint spectrum to render them tantamount to confinement. In fact, these conditions are generally consistent with the manner in which pretrial restriction is implemented throughout the Naval service, and our comparison of these conditions to those in other cases strengthens our determination that the conditions at issue are not tantamount to confinement.[22] Nor does Appellant assert

---

[21] Def. Ex. F; R. at 109.

[22] *See King*, 58 M.J. at 111-12 (holding restriction to dormitory, dining facility, squadron building, and defense counsel's office, reassignment to cleaning and manual labor duties, requirement to muster twice per day, and inability to use the gym not tantamount to confinement); *United States v. Guerrero*, 28 M.J. 223, 224-25 (C.M.A. 1989) (holding that restriction to quarters, latrine, chapel, mess hall and other places of duty, escort requirement, and muster "every 30 minutes until normal 'lights out'" not tantamount to confinement); *United States v. Parker*, 75 M.J. 603, 610-11 (N-M Ct. Crim. App. 2016) (holding restriction to base with permission to visit the Exchange, gym, on-base food establishments, and other base facilities with an escort, requirement to muster every two hours during the day, prohibition against receiving visitors, and

that he ever sought redress from his commanding officer or assistance from his counsel regarding these issues, and if he did not, why he did not. All we know is that he omitted any reference to pretrial restriction during trial. We can discern no rational explanation for this omission, and Appellant supplies none now.[23] Viewed in context against the record, particularly vis-à-vis his sentencing case, we view Appellant's silence regarding the conditions of his pretrial restriction as "strong evidence" that "the restriction was, in fact, not the same as confinement."[24]

Putting aside the alleged conditions we have rejected, we find the remaining conditions of restriction as described by Appellant (assuming but not deciding their truth) "sufficiently tailored" to prevent future serious misconduct, "ensure [Appellant's] presence at trial," and "maintain good order and discipline in the unit."[25] We find that Appellant has failed to establish a reasonable probability of a meritorious motion for *Mason* credit and therefore find his TDC were not deficient for failing to file a motion that lacked merit. In so finding, we have considered the nature and scope of Appellant's pretrial restriction and the totality of pertinent conditions.

---

reassignment to routine administrative functions not tantamount to confinement); *United States v. Patterson*, No. 201600189, 2017 CCA LEXIS 437, at *23 (N-M Ct. Crim. App. June 30, 2017) (unpublished) (holding restriction to barracks room, normal work area, any base chapel on Sundays, infirmary, mess hall, Area Exchange, barbershop, dry cleaners, and fitness center; regular musters in the uniform of the day or utilities four times per workday and every two hours between 0700 and 1500, then at 1800, 2000, and 2145 on weekends and holidays; required notification of the barracks NCO and an NCO escort when leaving the barracks; no operation of a privately-owned vehicle; and no visitors not tantamount to confinement); *United States v. Sullivan*, No. 200800774 , 2009 CCA Lexis 245 at *17 ((N-M Ct. Crim. App. July 14, 2009) (unpublished) (holding that restriction to limited area of base and prohibition against consuming alcohol, wearing civilian clothes, or having visitors was not tantamount to confinement).

[23] Appellant also failed to address the issue of his pretrial restriction in his post-trial clemency submission to the convening authority.

[24] *King*, 58 M.J. at 114 (citations omitted).

[25] *Parker*, 75 M.J. at 612.

We further find that TDC were not deficient for negotiating a plea agreement provision that waived all waivable motions. This provision waived nothing more than the "right" to file a losing motion,[26] in exchange for which Appellant gained a substantial benefit in the form of a promise from the convening authority to refer the charges to a special court-martial. Appellant avoided a felony-level trial with significantly greater punitive exposure—16 years of confinement and a dishonorable discharge—as against the 12 months and bad-conduct discharge stipulated by the plea deal. The strategic decision to accept such an obvious benefit in exchange for waiving the right to litigate a motion that lacked merit is objectively reasonable and, as such, does not constitute ineffective assistance of counsel.[27]

Accordingly, we conclude based on the record before us that Appellant has failed to sustain his burden to demonstrate his TDC were deficient.

## III. Conclusion

After careful consideration of the record and the parties' submissions, we have determined that the findings and sentence are correct in law and fact and that no error materially prejudicial to Appellant's substantial rights occurred.[28]

The findings and sentence are **AFFIRMED**.

Senior Judge GASTON and Judge HOUTZ concur.

FOR THE COURT:

S. TAYLOR JOHNSTON
Interim Clerk of Court

---

[26] *United States v. Nye*, No. 201600362, 2018 CCA LEXIS 13, *9 (N-M Ct. Crim. App. Jan. 18, 2018) (unpublished) (citing *United States v. McFadyen*, 51 M.J. 289, 290-91 (C.A.A.F. 1999)) (concluding *Mason* issues are waived by the plea agreement's waive all waivable motions provision). Regarding other unrelated motions, TDC advised the military judge there were no particular motions the Defense had planned to file but did not because of the waiver provision. R. at 94.

[27] *United States v. Datavs*, 71 M.J. 420, 424 (C.A.A.F. 2012).

[28] Articles 59 & 66, Uniform Code of Military Justice, 10 U.S.C. §§ 859, 866.